No. 29,840.

THE SKELLY OIL COMPANY, *Appellee*, v. KELLY et al., CORA WILSON and THE WILSON POULTRY COMPANY, *Appellants*.

(5 P. 2d 823.)

Opinion filed December 12, 1931.

*Arthur S. Brewster, Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V. Scholes, Margaret McGurnaghan*, all of Topeka, and *Maurice P. O'Keefe*, of Atchison, for the appellants.

*J. M. Challiss* and *Z. E. Jackson*, both of Atchison, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to quiet title to land. Demurrers were sustained to answers, and the answering defendants appeal.

The land in controversy, consisting of the south 110 feet of two lots in the city of Atchison, was condemned by the city for a park. Cora Wilson owned the north 30 feet, and the Wilson Poultry Company owned the south 80 feet of the tract. The condemnation resolution was passed by the board of commissioners of the city in June, 1925. In March, 1928, the city conveyed the land to plaintiff, who took possession and erected a filling station.

The action was commenced in May, 1928, by the purchaser against the former owners. The answer of Cora Wilson only is abstracted, the answer of the Wilson Poultry Company being of the same tenor. The answer discloses regular condemnation proceedings for a park, an award of damages, appeal by the owner from the award, and judgment in the district court for a sum in excess of the award. The answer contains no plain statement of fact with reference to what occurred after judgment. It was admitted at the oral argument that the judgment was paid, and that the city took possession and did something on the land; but the following ambiguous paragraph is all the answer contains on the subject:

"The city of Atchison, after such condemnation proceedings, never took any steps toward appropriating and using said land for the purposes for which it had been condemned, but took possession of the same and compelled this defendant to surrender possession of the same, and held the title to said property under said condemnation proceedings in the city so far as it could lawfully so hold it."

The court understands this paragraph to say that after condemnation the city took possession, and held title so far as it could do so, but did not devote the land to park purposes.

The answer alleges abandonment by the city by failing to use the land for park purposes and by conveyance to plaintiff, alleges lack of power to condemn for the purpose for which the land was used, and alleges reverter of ownership to defendant. The answer discloses that the sale price to plaintiff was more than the amount of the judgment recovered by the owner.

The answer states no facts showing the condemnation proceeding was either instituted or carried through for other than park purposes, and states no facts showing use of the land for park purposes

was not in contemplation when possession was taken. Bad faith in the exercise of corporate power by the governing body of the city will not be inferred, but must be made to appear by appropriate statement of facts. The court will not infer from the allegations relating to nonuser for park purposes and sale to plaintiff for a good price for private use, that the land was condemned or held for speculative purposes, and the answer does not disclose facts showing that either condemnation or sale was made other than in good-faith exercise of corporate power which the city commission supposed it possessed.

Solution of the question presented depends on the extent of the interest which the city acquired by condemnation. This must be ascertained from the legislative grant of power to condemn, and the question is one of interpretation.

The statutes authorizing cities to acquire land for public parks are in confusion, and counsel for defendants have aided the court by digesting them. The city proceeded under R. S. 26-201 to 26-210, inclusive, which contain the general law relating to condemnation of private property by cities. These sections are all revisions made by the commissioners appointed to revise the statutes, and were enacted by the legislature as portions of the Revised Statutes of Kansas of 1923. R. S. 26-201 reads:

"Whenever it shall be deemed necessary by any governing body of any city to appropriate private property for the opening, widening, or extending any street or alley, or to condemn private property or easement therein for the use of the city for any purpose whatsoever, the governing body shall cause a survey and description of the land or easement so required to be made by some competent engineer and filed with the city clerk. And thereupon the governing body shall make an order setting forth such condemnation and for what purpose the same is to be used."

It is then provided that commissioners shall be appointed to assess damages. The commissioners shall appraise each owner's interest and assess his damages, and shall file a report in the office of the city clerk. The city clerk deposits a copy of the report in the office of the city treasurer, and provision is made relating to payment of awards to persons entitled to them. R. S. 26-204, relating to disposition of report, payment of award, title, and possession, is not correctly printed in the Revised Statutes. The portion material here in fact reads as follows:

"The title to lands condemned by any city for parks, parkways or boulevards shall vest in such city upon the publication of the resolution of the

governing body condemning the same. Upon the recording of a copy of said report so certified in the office of the register of deeds of the county, the right to the possession of the lands condemned shall vest in the city, and the city shall have the right to forthwith take possession of, occupy, use and improve said lands for the purposes specified in the resolution appropriating the same."

R. S. 26-205 provides for an appeal by a landowner from the award of damages, and contains the following:

"But said appeal and subsequent proceedings shall only affect the amount of compensation to be allowed, and shall not delay the taking possession, occupation, use or improvement of such lands, upon the paying or depositing the amount so assessed by said commissioners with the city treasurer as aforesaid."

The result is, title to lands condemned for park purposes vests when the condemnation resolution is published. What is meant by the expression, "The title . . . shall vest in such city"?

The word title has a variety of meanings. It sometimes connotes the means by which property in land is established, as in the expression "chain of title." It sometimes means "property" or "ownership" in the sense of the interest one has in land. A common meaning is complete ownership, in the sense of all the rights, privileges, powers and immunities an owner may have with respect to land. (Am. Law Inst., Restatement of the Law of Property, draft No. 1; introduction.)

Plainly the word title as used in R. S. 26-204 does not have the meaning first indicated. The record of the steps pursued in perfecting condemnation constitutes the means of establishing the city's title, and it is the interest which the city acquired by the condemnation proceedings which vests. Therefore the word title indicates ownership, and unquestionably the usual and ordinary signification of the word when used alone in the sense of ownership is ownership in fee.

It will be observed that R. S. 26-201 relates to condemnation for specified purposes, and then to condemnation "for any purpose whatsoever," but condemnation for parks, parkways and boulevards is not specified. There is no provision in the statute for vesting of title except in case of condemnation for parks, parkways and boulevards. All other condemnations are governed by the provision that on recording of the copy of the condemnation report in the office of the register of deeds, the right to possession shall vest, and the city may forthwith take possession and use, occupy and improve

for the purpose specified in the resolution. The statute would have been effective to vest right to possess, occupy, use and improve without making special reference to parks, parkways and boulevards, and without making special reference to vesting of title. The legislature, however, deemed it important to insert a special provision relating to vesting of title in case of condemnation for parks, parkways and boulevards. This vesting of title is unqualified. The provision is not that on publication of the condemnation resolution title shall vest for park, parkway and boulevard purposes. The provision is that, when land is condemned for parks, parkways and boulevards, title shall vest on publication of the resolution. There is no connotation that title shall vest while, or so long as, the land is used for park purposes, and the court holds that in this instance the city acquired a fee simple, without so-called possibility of reverter to former owners.

The fee of the owners was not simply burdened with a public use in the nature of an easement, as in highway, right of way, and some other cases. In such cases the owner is not deprived of all interest. He is merely deprived of interest to the extent necessary for the particular use. When the particular use is abandoned, or the burden is otherwise removed, the owner has the same dominion he had before the public use was superimposed. In this instance the owners whose land was condemned were stripped of all interest, and the land became absolute property of the city.

The foregoing disposes of this case. Defendants claim in their capacities as owners of interests in land—indeed, as having complete ownership. They have no interest, and it is of no concern to them that after acquiring a fee the city did not devote the land to park purposes and later sold it.

The judgment of the district court is affirmed.