No. 41,689

ERNEST DEVENA, *Appellant*, v. COMMON SCHOOL DISTRICT No. R-16, Buhler, Kansas, JOHN A. FRANZ, ALBERT C. BECKER and JOHN D. SCHMIDT, as Members of the Board of said Common School District No. R-16, and E. P. MILLS, *Appellees.*

(348 P. 2d 827)

Opinion filed January 23, 1960.

*Abraham Weinlood; Bill R. Cole; Kenneth F. Ehling; D. Stewart Oswalt;* and *John H. Shaffer,* all of Hutchinson, were on the briefs for the appellant.

*H. R. Branine; C. E. Chalfant; W. Y. Chalfant;* and *M. E. Chalfant,* all of Hutchinson, were on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This was an action in ejectment to recover the possession of one square acre of land. Judgment was for the defendants and the plaintiff appeals.

The conditions and circumstances under which the case was submitted to the district court require a detailed recital of the pleadings from which, omitting preliminary averments, superfluous allegations and prayers, we quote:

"PETITION.

"1. Plaintiff resides . . . at . . . Buhler, . . .

"2. Common School District R-16 is a regularly organized and existing common school district at Buhler, Kansas, under and by virtue of the laws of the State of Kansas; Defendants, . . . Franz, . . . Becker and . . . Schmidt are . . . members of the School Board . . .

"3. Defendant, . . . Mills, resides . . . at . . . Buhler, . . .

"4. Plaintiff is the equitable owner and in possession of the following described real estate, situated in Reno County, Kansas, to wit:

(Here follows description of an eighty acre tract.), except as hereinafter indicated, under and pursuant to a contract of purchase wherein one Walter Applegate is vendor and Plaintiff is vendee, and as such Plaintiff is entitled to the possession of all of said property and all reversionary rights in any part of said property.

"5. On or about March 4, 1893, School District No. 39, being then a duly organized and existing common school district in Reno County, Kansas, condemned and obtained possession by such condemnation of one square acre (209 feet square) in the southwest corner of the southwest quarter of Section 29, Township 22, Range 4, . . . 'for a schoolhouse site.' Pursuant to such condemnation said School District No. 39 maintained a school on said square acre and remained in possession of said square acre until about April 19, 1957.

"6. On or about April 19, 1957, . . . said School District No. 39, . . . disorganized and was annexed to the Defendant, School District No. R-16, . . . and thereupon turned over its property and interests to said School District No. R-16. Thereupon and thereafter the school theretofore located on the southwest acre . . . was discontinued and abandoned, and there has been no use of said property for school purposes nor as a schoolhouse site since such discontinuance and abandonment.

"7. Upon such discontinuance and abandonment of said square acre as a schoolhouse site, Plaintiff became immediately entitled to the reversionary interest in said square acre and to the possession thereof. Notwithstanding such right of Plaintiff, and despite notification to the School Board of School District R-16, . . . of his right, said School Board and said School District have refused to recognize said rights of Plaintiff and such School District and the Defendants, . . . members of the Board of said School District have placed the Defendant, . . . Mills, in possession of said square acre as a purchaser thereof . . . and all of the Defendants now refuse to recognize Plaintiff's ownership and right of possession of said property, and deprive him of possession of the same. Plaintiff is unable to make a re-entry upon said property . . . on account of the position of all of the Defendants and their retention of physical possession thereof.

"8. Plaintiff's ownership and right of possession is paramount and superior to that . . . of the Defendants.

"ANSWER

(Common School District No. R-16)

"1. Defendant admits . . . paragraphs 1, 2, 3 and 6 of . . . Petition.

"2. This Defendant denies . . . the remaining material allegations contained in said Petition.

"3. Defendant . . . denies that Plaintiff has any title, . . . in the . . . described real estate . . .:

"One square acre (209 feet square) in the Southwest corner of the Southwest Quarter (SW¼) of Section Twenty-nine (29), Township Twenty-two (22), Range Four (4) West of the 6th P. M.

"4. Further answering, this Defendant states that on or about March 4, 1893, School District No. 39 in proceedings instituted before the Probate Court of Reno County, Kansas, pursuant to Chapter 174 of the Laws of Kansas of 1885, then in effect, sought to condemn the one acre of ground above described and to acquire the title thereto as a site for a school house; that appraisers were appointed, took their oath and made their report wherein they

appraised said acre of ground in the amount of Twenty Dollars ( $20.00 ), which sum was subsequently paid into the County Treasury for the benefit of the owner of said one acre of ground.

"That as the result of said statutory proceedings, the fee simple title to said one acre of ground vested absolutely in School District No. 39; and that this Defendant . . . and its predecessor in title to said one acre, . . . District No. 39, have been in . . . adverse . . . possession thereof for more than fifteen (15) years . . .

"5. . . . Defendant admits . . . District No. 39 maintained a school on said square acre . . . until about April 19, 1957, when said District was disorganized and was annexed to . . . District No. R-16, at which time the schoolhouse located on said acre of ground ceased to be used for school purposes.

"6. Defendant further admits that it has placed . . . Mills in possession of said . . . ground as a purchaser from School District No. R-16, but . . . the deed has not been delivered.

"Reply

"1. Plaintiff denies . . . new matter contained in said Answer except as . . . admitted or qualified.

"2. . . . denies . . . District No. 39 acquired fee simple title to the real estate involved . . . as the result of the statutory proceedings, referred to in . . . the Answer; . . . alleges . . . District No. 39 acquired no more interest in said real estate than was necessary to maintain a schoolhouse thereon and that said interest continued only so long as said real estate was used as a site for a school house; and that defendant, . . . District No. R-16, as successor to . . . District No. 39, has no greater interest.

"3. . . . denies . . . District No. 39 or the defendant, . . . District No. R-16 have been in adverse possession . . . under a claim of fee simple ownership; but alleges that the possession . . . has been pursuant to the condemnation referred to in the Answer, containing only sufficient interest to maintain a school house on the site, . . .

"4. . . . . . . ."

With issues joined as heretofore related the parties submitted the cause on a written stipulation. It reads:

"It is stipulated between Plaintiff and Common School District R-16, Buhler, Kansas, as follows:

"1. That all affirmative allegations of fact contained in the Petition, the Answer of Common School District No. R-16 and the Reply to said Answer are true and are all the material facts herein, except that the allegations concerning adverse possession contained in the last half of Paragraph 4 of said Answer are understood to mean that the possession of Common School District No. 39 and Common School District No. R-16 has been under claim of title, ownership and right only to the extent of such title, ownership and right as was acquired by the condemnation referred to in Paragraph 5 of the Petition and Paragraph 4 of the Answer, whatever it might be. It is understood that assertions of either party as to ownership or title, or the like, are not to be

considered as allegations of fact, but are to be regarded as conclusions of law not agreed to by the other party.

"2. It is further stipulated that the issue involved in this litigation is the extent of the right, title and interest of Common School District No. R-16, Buhler, Kansas, in the real estate referred to in the pleadings on the basis of the facts as stipulated in the preceding paragraph."

Thereafter, having received and considered briefs of the parties, the pleadings and stipulation, the court found against the plaintiff and in favor of the defendants and rendered the following judgment:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that Plaintiff be denied the relief prayed for and that judgment be entered in favor of the defendants.

"IT IS FURTHER ORDERED that the title to the following described real estate situated in Reno County, Kansas, to-wit:

"One square acre (209 feet square) in the Southwest corner of the Southwest Quarter (SW ¼) of Section Twenty-nine (29), Township Twenty-two (22), Range Four (4), West of the 6th P. M., be and the same is hereby confirmed in the Defendant, Common School District No. R-16, Reno County, Kansas, and that Plaintiff be barred from asserting any right, title or interest in said real estate."

Thereupon plaintiff perfected the instant appeal.

From the standpoint of time and space required to fully acquaint readers of this opinion with the controlling facts it might seem that many issues are involved on this appeal. Quite to the contrary. The parties concede the sole question involved on appellate review is what right, title and interest was acquired by the School District No. 39 as the result of the condemnation proceeding of 1893. In this connection it is to be noted the appellant insists the interest acquired was of a determinable nature, which expired when the public use was abandoned, with the reversion to the landowner, while the appellees contend that the condemnation resulted in a fee simple absolute title in the school district, leaving no reversion or other interest in the landowner.

In approaching consideration of the single question involved its disposition will be simplified by pointing out and directing attention to certain matters about which there can be little if any dispute. These, so far as the parties are concerned, may be stated in the following manner.

The extent of the interest which School District No. 39 acquired by the 1893 condemnation proceeding must be determined from

the empowering statute, then in force and effect, and the rights of the parties exclusively depend upon its terms.

No claim is here made, nor was it made in the court below, that condemnation of the one acre tract in question was not had in conformity with the then empowering statute, hence it must be assumed the procedure therein directed was strictly followed and the school district took such title to the tract as was contemplated by the scope of its terms.

The constitution of this state places no limitation or restriction on the nature of the title to lands which may be acquired by the process of eminent domain and the legislature has full power to determine the nature of the title to be so acquired by the condemner. (*Sutton v. Frazier*, 183 Kan. 33, 325 P. 2d 338.)

The general rule is that eminent domain statutes will be construed to authorize only the taking of an easement on or title to land sufficient for the public use intended rather than a fee title, unless the statute clearly so provides, either expressly or by necessary implication. (*Sutton v. Frazier*, supra.)

The empowering statute in force and effect on, or about, March 4, 1893, and on all dates of the involved condemnation proceeding, was G. S. 1889, Section 5591 (Laws of 1885, Chapter 174, Section 1). Such section of the statute reads:

"In case any school district . . . cannot, by purchase at reasonable rates, or by donation or otherwise, *obtain title to the site selected by such school district*; or if it be deemed advisable by such school district, . . . to add other ground to any schoolhouse site already selected; or if, in good faith, but by mistake or otherwise, a school house has been or shall be erected wholly or partially upon any land or lot to which said school district, at the time of the erection of such school building, or any addition thereto, *had not acquired title*, then, and in any such cases, upon the written application of the district board of such school district, or a majority of the board, it shall be the duty of the probate judge of the county in which such school district is situated, to appoint three disinterested freeholders of such county, . . ., to condemn and appraise such site, or addition thereto; and in case such land or lot so condemned and appraised shall be an original selection for a schoolhouse site, the amount so condemned and appraised shall not exceed one and one-half acres; . . . Immediately after their appointment, such appraisers shall proceed and condemn and appraise the value of the site so selected, or the addition to such existing site. And they shall, within ten days thereafter, make and sign a report describing the land or lot so condemned, the purpose for which it was so condemned, and the appraised value thereof, which report shall be by them filed in the office of the register of deeds of the

county in which such land or lot is situated, . . . In appraising any school-house site, or addition thereto, *to which such school district had not title* at the time of erecting any school house, or addition thereto, thereon, *said appraisers shall exclude from their appraisement the value of such school house, or addition, and appraise such land or lot at its value, exclusive of such building, addition, or other improvement placed thereon in good faith, but by mistake of said school district, or said school-district board.* Within thirty days after the report of said appraisers is filed in the office of the register of deeds, the district board of such school district shall pay to the county treasurer of the county in which such condemned land or lot is situate, for the use of the owner of such lands or lot, the amount of the appraised value thereof, and also fifty cents for said register of deeds for recording said report. *And upon such payment being made to such county treasurer by such district board, the title to such site, or addition thereto, shall vest in such school district.* . . ." (Emphasis supplied.)

It can now be stated that, notwithstanding suggestions of appellant to the contrary, this is not the first time the proper interpretation of the involved statute (G. S. 1889, Sec. 5591), insofar as it bears on the question of title, has been presented to this court for decision. The same statutory enactment, then appearing in G. S. 1901, Sec. 6131, was before the court in *Buckwalter v. School District*, 65 Kan. 603, 70 Pac. 605. There, although the validity of the condemnation proceeding itself which, as we have heretofore pointed out is not here in question, was principally involved, *this court saw fit to interpret the statute* with respect to the question of title acquired, under and by virtue of the proceeding and affirmed the judgment of the court below, holding that such proceeding was sufficient to vest title to the acre of land in dispute in the school district. In doing so it held:

"Condemnation proceedings by a school district in the exercise of the power of eminent domain for the purpose of acquiring a schoolhouse site, under the provisions of section 6131, General Statutes of 1901, divest the owner of title thereto, even though he at the time had only an equitable title, and thereafter received the legal title." (Syl. ¶ 1.)

And in the opinion said:

"Clearly, plaintiff in error was, at the time of these condemnation proceedings, the owner of this land, so that these proceedings, if in themselves sufficient, divested her of title thereto. . . . (p. 605.)

". . . The title passes upon the taking of the property.

". . . But it may be urged that no provision was made by the law for the giving of notice of these condemnation proceedings, even to determine the value of the land taken, and therefore its assessment was void. This

might be granted, *and yet the proceeding would vest title in the school district, for the condition on which the title was so to vest was upon payment's being made to the county treasurer by the district board.* . . . (pp. 607, 608.)

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"We, therefore, in this case hold that no notice was necessary to be given to plaintiff in error of the condemnation proceeding, in order that such proceeding should convey to the school district a good title to the schoolhouse site taken, and therefore the judgment of the district court was right and must be affirmed." (p. 609.) (Emphasis supplied.)

We believe that, standing alone, the foregoing decision, to which we adhere, requires an affirmance of the trial court's judgment. Even so it should perhaps be stated that, without it, we are convinced that when properly interpreted the provisions of G. S. 1889, Sec. 5591, particularly those heretofore underlined for purposes of emphasis, by necessary implication, compel the conclusion a school district appropriating land for a schoolhouse site in 1893, pursuant to the provisions of such section, acquired a fee simple title to the tract of land condemned for that purpose.

This conclusion, it may be added, is fortified and finds support in *Skelly Oil Co. v. Kelly,* 134 Kan. 176; 5 P. 2d 823, where, in interpreting a somewhat similar statute, we arrived at a like conclusion and held:

"By virtue of special provision in R. S. 26-204, relating to condemnation of land by a city for a park, title in the sense of complete ownership vests in the city on publication of the resolution of the governing body condemning the land." (Syl. ¶ 1.)

In reaching the foregoing conclusions we have not overlooked contentions strenuously argued by appellant to the effect this case is governed by *Sutton v. Frazier,* supra. We are not disposed to here review that decision. It suffices to say that the empowering statute there involved is far less comprehensive than the one now under consideration; that the decision in *Skelly Oil Co. v. Kelly,* supra, was there distinguished and approved; that there we expressly said the extent to which the condemner acquired rights or title to the surface of the land condemned was not a question presently before us for decision; and that we are convinced what is said and held in such case, particularly on pages 41 to 43, incl., completely refutes any claim it should be regarded as a precedent controlling our decision in the case at bar.

Based on what has been heretofore stated and held the judgment must be and it is hereby affirmed.