No. 45,335

MARY D. WALTON and THEODORE P. WALTON, JR., *Appellants*, v. UNIFIED SCHOOL DISTRICT NO. 383, *Appellee.*

(454 P. 2d 469)

Opinion filed May 17, 1969.

*Charles D. Green,* of Manhattan, argued the cause, and *Richard C. Wells,* of Manhattan, was with him on the brief for the appellants.

*Donald R. Hill,* of Manhattan, argued the cause, and *Richard D. Rogers* and *John F. Stites,* both of Manhattan, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is a dispute over title to an acre of land formerly the site of a rural schoolhouse. The contest is between the successor school district and the grantees of the heirs of the owner of the land out of which the acre tract was initially carved.

The facts in the case, so far as they are known, are not in substantial dispute. In 1903 George Chandler owned and was in possession of a 15.61 acre tract in Riley county. On July 10, 1903, Rocky Ford School District No. 70 voted to locate a new school building on the Chandler tract. According to the district's records $150.00 was paid to Chandler in August, 1903, for a "school house site." The district took possession of the one acre tract in question

and built a schoolhouse on it in 1903. The tract was fenced from the remainder of the Chandler land and the district and its successor districts have maintained and been in possession of it since 1903. No evidence was shown whether the one acre tract was listed for taxation from 1903 to 1937; after 1937 the one acre tract was not so listed and was excluded from the land on which Chandler and his successors paid taxes. Chandler did not at any time execute a deed to the school district. The district held school in the schoolhouse from 1903 until 1937. In 1937 school activities were discontinued, school was transferred to another schoolhouse and thereafter the tract was not used for the holding of school. From 1937 to 1965 various community activities were held in the building. Chandler died in May, 1945. In 1946 his heirs executed a deed to Mary D. and Theodore P. Walton, Jr., appellants herein, conveying to them the 15.61 acre tract initially owned by Chandler.

On May 12, 1965, the Waltons commenced this action by filing their petition to quiet title to and secure possession of the 15.61 acres. Unified School District No. 383 intervened in the action as successor to the named defendant, Strong School District No. 1, successor to the Rocky Ford District, claiming title to the one acre tract contained in the 15.61 acre tract by reason of adverse possession for more than twenty-five years.

Trial to the court resulted in findings and judgment for the school district and plaintiffs have appealed.

The trial court's findings recited evidentiary facts as already stated and continued as follows:

"7. That the school district does not have a recorded deed to said property; but that the said Strong School District in 1903 did enter into some agreement with the said George Chandler for said one acre tract for which the sum of $150.00 was paid. That from the evidence the Court is unable to determine the terms and conditions of said agreement, but does find that the said Strong School District in 1903 did enter onto said one acre tract of land under a belief of ownership, the nature thereof being unknown, that is whether they acquired fee simple or less than fee simple title.

"8. That in March, 1946, the plaintiffs acquired title to the land described in paragraph one hereof by conveyance from the heirs of George Chandler deceased. That the said plaintiffs however did not take possession of said one acre tract from 1946 until the present time. That the said plaintiffs received tax notices on which said one acre was excluded for tax purposes. That during the period of time from 1946 to the present time the said one acre site was used by the defendant and its predecessors in interest, not for the holding of school, but for community activities and exercised those incidents of ownership described in paragraph 4 above.

"9. The Court further finds that the defendants and their predecessors in interest from 1903 until March, 1946, were in open exclusive and continuous possession of said one acre tract under a claim knowingly adverse and under belief of ownership.

"10. The Court further finds that since March, 1946, at which time the plaintiffs were conveyed this one acre tract by the heirs of George Chandler deceased, that the defendants and their predecessors in interest were in the open, exclusive and continuous possession of said one acre tract from the said March, 1946, until the present time.

"11. The Court further finds that if the agreement between George Chandler and the School District was for less than the fee for said one acre tract, said agreement was repudiated by the School District in 1937, when use as a school was discontinued, and use as a Community Center began and continued until the present time.

"Conclusions of Law

"That by virtue of the defendants and their predecessors in interest adverse possession of said one acre tract, the plaintiffs cannot maintain an action against the defendants for recovery of said real estate and defendant is entitled to said real estate by virtue of the law of adverse possession and title in fee simple is vested in defendant."

Our present law of adverse possession is based on K. S. A. 60-503 which provides:

"No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years. This section shall not apply to any action commenced within one (1) year after the effective date of this act."

Appellants contend the original occupancy of the one acre tract by the school district was with the permission of the original owner, Mr. Chandler, that its possession remained permissive, and there was never any repudiation by the district of the agreement giving rise to the permissive use. They cite familiar law that use by permission or under a license cannot ripen into a prescriptive right. To support their contention there was no repudiation they rely on K. S. A. 72-834 which provides in part:

". . . the school building of a district which is consolidated, annexed or disorganized, which building is not being used for school purposes, may be used for neighborhood assemblies and educational, patriotic and other community activities of the character ordinarily using rural schoolhouses as meeting places, and shall not be sold so long as the same is so used if fifty-one percent (51%) of the electors residing in the territory which comprised such district shall within sixty (60) days after the effective date of the order of consolidation, annexation or disorganization, petition the school board having charge of such building not to sell such school building. . . ."

Appellee replies there was evidence to support the trial court's finding of a repudiation of any permissive agreement with a consequent adverse holding for more than the requisite period of time.

When there is dispute or doubt as to whether the occupant of lands claims adversely so as to acquire title by adverse possession, a question of fact is presented to be determined by the trier of the facts, and the determination so made, if based on substantial competent evidence, is binding upon appeal (see cases cited 1 Hatcher's Kansas Digest, rev. ed., Adverse Possession, § 34, and Perm. Supp. Vol. 1-3, p. 18; 2 West's Kansas Digest, Adverse Possession, § 115). In determining whether there is adverse possession our decisions have emphasized the element of intent of the adverse possessor (see *Aylesburg v. Lawrence,* 166 Kan. 8, 199 P. 2d 474; *Tucker v. Hankey,* 173 Kan. 593, 250 P. 2d 784; *Casner v. Common School District No. 7,* 175 Kan. 551, 265 P. 2d 1027; *Truck-Trailer Supply Co. Inc. v. Farmer,* 181 Kan. 396, 311 P. 2d 1004). In the last cited case we find this:

"It may be stated that the question of adverse possession is one of intention. The intent with which the occupant has held possession is to be determined from all of the surrounding circumstances and especially from the acts of the possessor. His intention need not have been manifested by word of mouth . . . the acts done must be such as to give unequivocal notice of the claim to the land adverse to the claims of all others and must be of such a character and so openly done that the real owner will be presumed to know that a possession adverse to his title has been taken. . . ." (p. 400.)

Assuming the school district initially took less than a fee simple title, the district's use and occupancy of the land could be only for school purposes and for no other (see *School District v. Barnes,* 110 Kan. 25, 202 Pac. 849). In 1937 a school district had no authority to maintain a building solely for the purpose of holding community activities therein. That authority did not come until later with the enactment of Laws, 1951, Chapter 396, Section 13 (now K. S. A. 72-834 already quoted) and then only when empowered by fifty-one per cent of the electors residing in the district. It is true that from 1903 on the governing body of a school district could permit a schoolhouse belonging to the district to be used for certain type public meetings (see G. S. 1901, § 6194) but this authority for outside use contemplated and depended on the fact the building was being used for the holding of school.

In 1937 the district discontinued holding school or school activities on the tract in question. This was an open, visible, physical

act. The district continued to occupy the land with no semblance of school activity, and we think an intent to hold adversely was sufficiently manifested so that Mr. Chandler was put on notice that any agreement for less than a fee, if such existed, was being repudiated. Over the entire period from 1937 no one except the district claimed any title to the school grounds. In *Casner v. Common School District No. 7,* supra, there was evidence a school district had taken a deed to an additional half acre adjoining its school site but the deed was never recorded and had become lost or destroyed. The district had paid for the property, fenced it and made improvements upon it, and had occupied it for more than thirty-seven years. A granddaughter of the original grantor of the property sought to recover it, relying on the absence of a deed. This court denied her claim on the basis the school district had acquired title by adverse possession, emphasizing the fact the original owner, knowing of the use to which the property had been put, had stood by without complaint over a long period of time.

We hold there was sufficient evidence to support the trial court's finding that in 1937 there had been a repudiation of any agreement and that appellee and its predecessors in title were for more than fifteen years in open, exclusive and continuous possession of the one acre tract under a claim knowingly adverse.

In view of this conclusion we need devote little time to the trial court's other finding respecting appellee's holding under belief of ownership. It too found support in the evidence although concededly the facts developed were scanty. One long-time board member thought the property belonged to the school district and not to Mr. Chander. One of Mr. Chandler's heirs, an eighty-nine year old daughter, testified the deed she gave to the appellants was in error as to the description; that she told Mrs. Walton the schoolhouse did not go with the property and that only fourteen acres were deeded; the error in description was not discovered until later.

Although not significant to our determination the record also contains considerable indication that proceedings in eminent domain may have been undertaken to secure this one acre although perhaps not formally recorded. Briefly, the eminent domain statute then in effect provided for appointment of three appraisers by the probate court to condemn and appraise property taken for a school site where the district was not able to secure the necessary property by purchase at reasonable rates, donation or otherwise. It also

provided for formal recording of certain of the proceedings (G. S. 1901, § 6131). Mr. Chandler's eighty-six year old daughter testified respecting her father not wanting to give a deed to the school board:

"Yes, I heard him say that more than once, he said if they appraised an acre of ground and took it for school, they will have to appraise it, but he wouldn't give them a deed for it."

Rocky Ford District's warrant register shows that in addition to the payment to Chandler for a schoolhouse site, three men were each paid two dollars for "viewing and appraising school site." Although, as indicated, we do not rest our affirmance upon this point, if in fact the district had actually condemned the acre tract, it would have acquired under the then existing eminent domain statute a fee simple title (*Devena v. Common School District,* 186 Kan. 166, 348 P. 2d 827.)

We find no error in the judgment appealed from and it is affirmed.

APPROVED BY THE COURT.