No. 50,258

KANSAS GAS AND ELECTRIC COMPANY, *Plaintiff-Appellant,* v. ALBERT J. WINN, *et al., Defendants-Appellees.*

KANSAS GAS AND ELECTRIC COMPANY, *Plaintiff-Appellee,* v. ALBERT J. WINN, *et al., Defendants-Appellants.*

(605 P.2d 125)

Opinion filed January 19, 1980.

*Robert D. Steiger,* of the Law Offices of Ralph Foster, of Wichita, argued the cause and was on the briefs for plaintiff-appellant and plaintiff-appellee.

*F. C. McMaster,* of McMaster & Smith, of Wichita, argued the cause and was on the brief for the defendants-appellants, Albert J. Winn and Kathleen M. Winn.

*Clyde M. Burns,* of Burns & Burns, P.A., of Lyndon, argued the cause and was on the brief for the defendants-appellees, Purl Lance and Evelyn Lance.

The opinion of the court was delivered by

FROMME, J.: This appeal involves rights to possession and use of land taken by a public utility in a condemnation proceeding. The condemnation proceeding was filed by Kansas Gas and Electric Company (KG&E) for the purpose of acquiring a site for the construction of an electric generating plant and a reservoir for the impoundment of water. This site is commonly referred to as the Wolf Creek Nuclear Power Plant. It is located near Burlington, Kansas.

The appraisers' report was filed on February 21, 1975. The amounts of the two awards involved here were paid into court, drawn down by the landowners, and no question is raised concerning the amounts of these awards or the procedure followed in arriving at the amounts.

Some difficulty arose in 1978 over possession of the land and KG&E applied to the district court for writs of assistance under K.S.A. 26-507. KG&E sought possession and use of a 320 acre tract, hereafter referred to as the "Winn property," and of an 80 acre tract, hereafter referred to as the "Lance property." KG&E filed separate motions in the condemnation proceeding. The district court held separate evidentiary hearings. It fully explored the facts surrounding the stages of construction of the facilities, the current construction needs of KG&E, and the nature and extent of the possession and use requested by the utility.

The construction plans for the reservoir called for the construction of various buffer or saddle dams on these properties to be located along the high water mark of the reservoir. The construction area designated in the plans for this purpose included 250 feet on both sides of these saddle dams plus additional areas from which earth was to be taken to build the dams. Certain farm buildings, which had been appropriated, were located within the 250 foot strip designated as the construction area on the "Lance property." As to the "Lance property," the court limited the construction area to be used. KG&E and its contrac-

tors were not allowed to use the area where the buildings were located. It was ordered that heavy construction equipment should get no closer than 20 feet east of a chicken house and 50 feet east of a barn. Although the court found that demolition of the buildings would facilitate and lower costs of construction, it prohibited demolition of the buildings saying such was not absolutely necessary to carry out the purposes for which the land was condemned. The court further restricted the condemner's use of the land appropriated by limiting access on the west to five areas.

As to the "Winn property," the court found that KG&E was entitled to possession of the property to the extent necessary for the purpose for which it was taken, and consistent with the easement condemned. The only specific restrictions imposed against possession and use of this property were limited to the period of any appeal and until the mandate of this court is returned. The seemingly inconsistent holdings of the court as to these two properties were explained and justified by the court on the basis of separate hearings and differences in the evidence. The Winns have appealed from the order entered on the "Winn property." KG&E has appealed from the order entered restricting its possession and use of the "Lance property."

KG&E argues that K.S.A. 26-501 et seq., the eminent domain procedure act, does not empower the district court in a condemnation proceeding to hear evidence and determine in specific instances the extent to which a condemner is entitled to possession and use of a permanent easement previously condemned. It further argues that such a determination may be obtained only by filing a separate action, such as an injunction action. KG&E paid for full legal title to the land as shown by the appraisers' report.

The Lances and the Winns in answering the foregoing contentions assume a condemnation proceeding is the proper forum in which to obtain a determination on the extent of the use acquired and argue that the nature and extent of the interest taken by KG&E limits and restricts the possession and use which KG&E may make of the premises.

The first question to be answered is whether KG&E obtained fee simple title by reason of the appraisers' report and the payment of the entire value of these properties as set by the appraisers.

104

The statute authorizing KG&E to exercise the right of eminent domain in this case is K.S.A. 17-618 and provides that "lands may be appropriated for the use of" certain corporations. The general rule is that an eminent domain statute will be construed to authorize only the taking of an easement on land sufficient for the public use intended in the authorizing statute. Unless a statute specifically authorizes the condemning authority to take title to real property in fee simple, no language incorporated in the papers of the eminent domain proceeding can enlarge or extend the power of the condemning authority beyond the limits imposed by the authorizing statute. *Sutton v. Frazier,* 183 Kan. 33, 34, 325 P.2d 338 (1958); *State, ex rel., v. State Highway Comm.,* 163 Kan. 187, 182 P.2d 127 (1947). The authorizing statute in this case does not specifically authorize the taking of a fee simple estate and therefore KG&E is limited to an appropriation for the use and purposes of the corporation, a permanent easement.

The jurisdictional instrument in a condemnation proceeding is the petition. In this case the petitioner expressed a desire to obtain a permanent easement over, on, under and through the entire property. It stated that KG&E was organized and is operating as an electric public utility corporation for the manufacture, generation, transmission and distribution of electric current and energy for light, heat and public use within the meaning of K.S.A. 17-618. The purpose of the taking as stated was "for the acquiring of a site for the location of an electric generating plant and reservoir to be constructed by the Plaintiff for the generating of electricity and the distribution of the same." The petition included a statement that the permanent easement sought would be the dominant estate over, on, under and through the entirety of the property and would be burdened with all ad valorem taxes and assessments. Prayer was made for immediate possession.

The appraisers' report set the value of the entire "Winn property" before condemnation at $299,250.00, with no value remaining after condemnation, and a total award of $299,250.00. On the "Lance property" the value of the entire property before condemnation was set at $86,190.00, with no value remaining after condemnation, and a total award of $86,190.00. In addition to the usual recitations in their report, the appraisers stated: "We did not consider the permanent easement aspect of the petition,

but made our appraisals on the basis of a complete taking of the property."

On the basis of *Sutton v. Frazier*, 183 Kan. 33, and *State, ex rel., v. State Highway Comm.*, 163 Kan. 187, the petition controls. It is the jurisdictional instrument. A permanent easement was sought. K.S.A. 17-618, which authorizes certain corporations to appropriate land for public use, does not authorize the taking of a fee simple estate.

The appraisers' report could not authorize an appropriation of more than a permanent easement. KG&E did not acquire fee simple title.

In the case of a permanent easement the condemner has the paramount right to possession and use of all the land covered by the permanent easement for the purposes and uses set forth in the appraisers' report. The former proprietor of the soil retains fee title to the land and his rights extend to all purposes not incompatible with the rights of possession and use of the condemner. *K.C. Rly. Co. v. Allen*, 22 Kan. 285 (1879).

In *Harvey v. Railroad Co.*, 111 Kan. 371, 373, 207 Pac. 761 (1922), it is said:

"It was not necessary for the condemnation commissioners in 1879 to limit the amount of land to be condemned for railway purposes to the actual acreage required at that time. In the exercise of their discretion they could look to the future and to the gradually expanding need for switch yards, sidings, workshops and the like, and condemn such amount as seemed reasonable to them. Nor was this any hardship on the owner. He was paid for the land taken; and yet he and his successors in title down to and including the plaintiff have none the less enjoyed the possession, emblements and profits of most of the condemned property for all these years. Of course, so long as the railway company did not need all the property condemned, the successive fee-title holders were strictly within their rights in occupying and using it."

In *Spears v. Kansas City Power & Light Co.*, 203 Kan. 520, 529, 455 P.2d 496 (1969), we recognized the rule that the use made of an easement acquired by eminent domain must not only be germane to the purposes for which the easement was acquired but it must be reasonable as well. In *Spears* it is held:

"In an eminent domain proceeding the report of the appraisers becomes the evidence and the only evidence of the extent of the easement taken and the extent of its use." Syl. ¶ 4.

"An easement, or servitude imposed upon the lands of another, extends to uses which are directly or indirectly conducive to advance the purposes for which it was obtained." Syl. ¶ 6.

"In determining the extent of land required for or the use needed of an easement serving legitimate public purposes, account may be taken of future demands which may reasonably be anticipated." Syl. ¶ 8.

It goes without saying that in the present case the easement or servitude imposed on defendants' lands included possession and use for the purpose of constructing the saddle dams. KG&E was entitled to full use and possession of the construction areas indicated in the construction plans and the district court had no right to restrict and limit such rights merely because certain areas were not absolutely necessary in the judgment of the court.

In *Sutton v. Frazier,* 183 Kan. at 37-38, it is stated:

"The eminent domain proceeding does not provide a forum for litigation of the right to exercise the power of eminent domain nor the extent thereof. Upon appeal to the district court from an award the sole issue is the amount of compensation due and no contest of the condemner's right to exercise the power of eminent domain is permitted. The condemnees may and must litigate the condemner's right to the exercise of the power of eminent domain in an individual civil action, usually by suit for injunction."

The procedure followed in the present case does not comply with the law gleaned from the foregoing decisions. This is an eminent domain proceeding, not an individual civil action.

Running through all these cases is the rule that a condemnation proceeding instituted under K.S.A. 26-501 *et seq.,* is a special statutory proceeding. Such proceeding does not provide a forum for litigation over the right to exercise eminent domain or to determine the extent of said right. *Urban Renewal Agency v. Decker,* 197 Kan. 157, 415 P.2d 373 (1966). It is further held that the right to exercise the power of eminent domain and to determine other issues such as the necessity and the extent of the taking can only be litigated in an individual civil action, usually by suit for injunction. *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.,* 215 Kan. 218, 523 P.2d 755 (1974).

KG&E was acquiring 10,500 acres of land on which to build a huge nuclear plant for the generation and transmission of electrical power. A large dam was to be constructed so as to impound a large reservoir of water, necessary for cooling purposes. Much of the land had been acquired by outright purchase from the owners. The balance had to be appropriated through eminent domain proceedings. The reservoir being built and the saddle dams located at the high water mark are located where they are required by the contours of the land. Therefore, some of the outer

portions of these two rectangular tracts were not in any construction area. The former proprietors contested the issuance of the writs of assistance because of the possible effect construction might have on the farm buildings and upon the land located outside the immediate construction area. All of this land, together with the buildings and farm ponds, was included in the eminent domain proceeding. The full value of the real property taken was paid into court and drawn down by the former proprietors. When the amount of the award is paid into court the condemner is entitled to possession and use of the property and if necessary may obtain a writ of assistance to place it into possession of the land appropriated.

K.S.A. 26-507 in pertinent part provides:

"If the plaintiff desires to continue with the proceeding as to particular tracts it shall, within thirty (30) days from the time the appraisers' report is filed pay to the clerk of the district court the amount of the appraisers' award as to those particular tracts and court costs accrued to date, including appraisers' fees. Such payment shall be without prejudice to plaintiff's right to appeal from the appraisers' award. Upon such payment being made the title, easement or interest appropriated in the land condemned shall thereupon immediately vest in the plaintiff, and it shall be entitled to the immediate possession of the land to the extent necessary for the purpose for which taken and consistent with the title, easement or interest condemned. The plaintiff shall be entitled to all the remedies provided by law for the securing of such possession."

When the amounts of the appraisers' award, appraisers' fees and court costs have been paid into court the title to the permanent easement vested in the plaintiff-condemner. The plaintiff-condemner was then entitled to the immediate possession for the purposes for which the land was taken and consistent with the easement condemned. When the court has made the determination that the money has been paid into court the plaintiff is entitled to all remedies provided by law for securing possession. The court then must issue the writ of assistance without limitations. In an eminent domain proceeding the court has no right to litigate outside issues raised by the condemnee in an effort to restrict and limit the rights appropriated. *Sutton v. Frazier,* 183 Kan. 33; *Urban Renewal Agency v. Decker,* 197 Kan. 157; and *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.,* 215 Kan. 218.

In the present case KG&E condemned and paid for a permanent easement over every acre of these two properties. During the

construction stages of the project KG&E had full right of possession and use thereof. The district court had no legal authority to limit and restrict KG&E in the possession and use made of the easement so long as that use was a reasonable use and germane to the purposes for which the easement was acquired. *Spears v. Kansas City Power & Light Co.,* 203 Kan. 520. As previously pointed out the determination of necessity for and the extent of the taking is left to the condemning authority subject to any limits imposed by the authorizing statute. When a permanent easement is obtained the condemner is restricted to the particular area condemned. Here the entire premises, including the buildings, fences and farm ponds were condemned. The condemner had the right to full access and use of the premises condemned during the construction phases of the project. After the construction has been completed according to plan the former proprietor of the soil who still retains the fee title to the land has the rights not appropriated by the holder of the permanent easement. The former proprietor's possession and use of the premises must not be incompatible with the rights of possession and use by the condemner during construction phases of the project.

If a condemning authority makes some use of the land which is not germane to the purposes for which the permanent easement was acquired or which use is unreasonable and incompatible with the necessary and proper possession and use of the property appropriated, the condemnee is not without a remedy. The condemnee who holds the fee title subject to the rights appropriated may litigate the extent of the condemner's rights of possession and use in an individual civil action, such as a suit for injunction. *Sutton v. Frazier,* 183 Kan. 33; *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.,* 215 Kan. 218.

In the present case the motions for writs of assistance should have been granted. The eminent domain proceeding had progressed to the point where this property had been appraised, the appraisers' report had been filed and the total amount of the awards plus appraisers' fees and court costs had been paid into court. When this was done the plaintiff-condemner was entitled to a writ of assistance to put it in possession of the entire premises. If the condemnee desired to raise outside issues concerning the extent of possession and use of the property by the condemner, this had to be done by separate action brought by the condemnee.

The judgments are reversed and the case is remanded with directions to proceed in accordance with what has been said in this opinion.