(636 P.2d 802)

No. 52,203

THE BOARD OF EDUCATION OF UNIFIED SCHOOL DISTRICT 512, *Appellee,* v. VIC REGNIER BUILDERS, INC. and DENNIS L. STEELE and FRANCES STEELE, *Appellants.*

Petition for review granted March 3, 1982.

Opinion filed November 25, 1981.

*H. Thomas Payne,* of Payne & Jones, Chartered, of Olathe, for appellant.

*Robert F. Bennett,* of Bennett, Lytle, Wetzler, Winn & Martin, of Prairie Village, for appellee.

Before JUSTICE FROMME, presiding, PARKS, J., and B. MACK BRYANT, District Judge Retired, assigned.

FROMME, J.: The plaintiff school district brought this action to quiet its title to certain real estate in Johnson County, Kansas, on which certain school buildings are located. The action was brought against the former owners of the real estate who had been divested of title in eminent domain proceedings in 1956 and

1959. The question to be decided is whether the eminent domain statute, G.S. 1949, 72-4701 (1955 Supp.), under which title was acquired by the district, authorized the taking of fee simple title. The district court held that it did, that the school district acquired fee simple title, and that the title of the school district should be quieted against the claims of the former owners. The former owners appeal to this court and we reverse.

The following facts are undisputed: In 1956 the predecessor of U.S.D. 512 acquired the property of the defendants, Dennis L. Steele and Frances C. Steele, by right of eminent domain. The parties do not question the regularity of those proceedings, only the extent of the title acquired. The pleadings in the condemnation action merely alleged it was necessary to *appropriate and acquire* the private property *for use for a site for a school building.* The appraisers appraised the land and assessed damages both for the value of the tract and for severance. The journal entry provides that upon payment of $15,000.00 plus court costs and appraiser's fees, the title to said lands shall immediately vest in the school district. The amount was paid into court and the school district proceeded to construct a building thereon.

In 1959, three years later, the predecessor of U.S.D. 512 commenced a similar proceeding to acquire certain property of the defendant Vic Regnier Builders, Inc., which was adjacent to the property previously acquired from the Steeles. The eminent domain proceedings were undertaken pursuant to the authority of G.S. 1949, 72-4701 (1955 Supp.), as before, and the petition alleges the necessity for appropriating the property for the lawful purposes of the school district. The journal entry recited that the district had the right of eminent domain for the purpose of appropriating the land described in its petition to be used as an addition to and an extension of its present school building site. The appraisers valued the land and set damages at $10,500.00. The amount was paid into court and the school district has since held possession of the property. The parties do not question the regularity of these proceedings, only the extent of the title acquired.

As a result of these two condemnation proceedings, the plaintiff's predecessors acquired the property, constructed a school building, and added to the school building site. The property so

condemned became part of the Marsha Bagby Grade School Attendance Center.

Thereafter, the number of students attending at this attendance facility dropped and in 1978 the electors within the area voted to close the school since it was no longer needed as an attendance facility. Plaintiff alleges in its petition that the building continues to be used for school purposes, including the offices for the Special Education Department of the district, and that the school board now desires to clear title to the real estate so that the property may be sold or otherwise disposed of. The defendants answered and alleged that the school district acquired only the right to use the two parcels of land as a site for school buildings and for other school purposes. They further allege that the property has been abandoned, that it is no longer being used for the purposes authorized, and that, when abandoned, the title to the property reverts to the former owners, the defendants.

We note that the defendants filed cross-petitions raising additional issues, each claiming title not only as against the plaintiff but also as against each other. The district court did not reach these issues for it held plaintiff acquired fee simple title, thus excluding any and all claims by the defendants.

The power of eminent domain can only be exercised pursuant to some specific authorization by legislative enactment. *Soden·v. State Highway Commission,* 192 Kan. 241, 244, 387 P.2d 182 (1963).

The extent of any taking by eminent domain is limited to that estate, title, or interest expressly authorized by the enabling legislation and no person can be divested of any greater interest by condemnation than is authorized by the enabling statute. *Sutton v. Frazier,* 183 Kan. 33, 39, 325 P.2d 338 (1958).

The enabling legislation empowering the school board in the present case to acquire the defendants' properties provided:

"The right of eminent domain is hereby conferred upon common-school districts, rural high-school districts, community high-school districts and the boards of education of cities of the first and second class, to be exercised in the manner provided by article 1 of chapter 26 of the General Statutes of 1949 and acts amendatory thereof and supplemental thereto. Such right of eminent domain may be invoked for the purpose of *appropriating* private property for *use* for sites for school buildings, playgrounds, agricultural, vocational or athletic purposes, or any addition or *extension to any school building site* or playground, or for any other school purpose for which property may be lawfully acquired." G.S. 1949, 72-4701 (1955 Supp.). Emphasis supplied.

We note in reading this statute, neither the word "title" nor the phrase "fee simple title" appears in the statute to indicate the extent of any interest to be taken.

An eminent domain statute will be construed to authorize only the taking of an easement or an interest in land sufficient for the public use intended rather than a fee title, unless the enabling statute clearly provides otherwise, either expressly or by necessary implication. *Kansas Gas & Electric Co. v. Winn,* 227 Kan. 101, 104, 605 P.2d 125 (1980); *Devena v. Common School District,* 186 Kan. 166, 170, 348 P.2d 827 (1960); *State, ex rel., v. State Highway Comm.,* 163 Kan. 187, 196, 182 P.2d 127 (1947).

The defendant-appellants rely heavily on *Sutton v. Frazier,* 183 Kan. 33, and *Kansas Gas & Electric Co. v. Winn,* 227 Kan. 101, in support of their argument that the school district acquired only an easement. The *Sutton* case involved the condemnation of property to construct sewage disposal plants. The court in *Sutton* examined G.S. 1949, 19-2765 which provided:

" 'That every improvement district incorporated under the terms of this act shall have the power:

. . . .

" '*Third,* to plan and construct public works and improvements necessary for public health, convenience or welfare within the limits of the improvement district. Also to construct works outside the limits of the district which may be necessary to secure outlets, disposal, etc., and permit satisfactory performance of the works within the district.

. . . .

" '*Fifth,* to take private property for public use by exercise of the right of eminent domain as provided by law.' " 183 Kan. at 40.

The court in *Sutton* used strong language in reaching its conclusion that the sewer district did not acquire fee title:

"Nowhere in the empowering statute (19-2765, *supra*) has the legislature clearly provided, either expressly or by necessary implication, that an improvement district in the exercise of its power of eminent domain acquires title to real property in fee simple absolute. The statute is silent as to how much land, or what interest therein, shall pass to the improvement district, and how much of the land, or what interest therein, shall remain with the original proprietor. Therefore, it must be inferred that the legislature did not intend to confer upon an improvement district the power to acquire title to any greater interest in land condemned than was necessary to make the public improvement project, in this case a sewage disposal plant, a good and sufficient operating plant for the public.

. . . .

"The legislature is capable of speaking with clarity when it intends that the condemning authority shall acquire the fee simple title to real property taken

under the power of eminent domain. (See Laws of 1864, Ch. 124, § 4, repealed; G.S. 1957 Supp., 13-1388; G.S. 1957 Supp., 17-4749; and G.S. 1957 Supp., 68-413 and 413a.)

. . . . .
". . . Nothing is taken by implication or intendment." 183 Kan. at 43, 43, 45.

In *Winn* this court construed K.S.A. 17-618, which authorized public utility companies to appropriate land for the use of said utility corporations. This court held that since the empowering statute, K.S.A. 17-618, did not specifically authorize the condemning authority to take title to real property in fee simple, the condemner was limited to an appropriation limited to the use and purposes of the corporation, a permanent easement.

The appellee school district in support of the lower court's decision relies first on the wording in the eminent domain procedural statute in effect in 1956 and 1959, G.S. 1949, 26-101. This statute provided for the filing of a petition, the appointment of appraisers, publication of notice, and then concluded:

"If the petitioner desires to acquire the land at the appraised price it shall within thirty days deposit with the clerk of the district court the total amount of such appraisement, shall pay the court's costs and the fees of the appraisers, to be fixed by the court or the judge thereof, and the *title* to all such lots and parcels of ground thereupon *shall immediately vest* in the said petitioner, and the said petitioner shall be entitled to the immediate possession thereof and all remedies provided by law for the security of such title and possession." G.S. 1949, 26-101. Emphasis supplied.

G.S. 1949, 26-101 *outlined the procedure* for the condemnation of land by a corporation having the right of eminent domain in 1956 and 1959. It contained *no grant of power* and could not affect the extent of the authority exercised under an enabling act. *Sutton v. Frazier,* 183 Kan. at 40. Therefore, any reliance on the wording of the procedural statute to bolster the extent and nature of the interest or title authorized to be taken is misplaced. The extent and the nature of the interest or title which may be acquired by eminent domain is limited to that which is expressly authorized by the enabling legislation.

The appellee school district relies on two cases which involve the condemnation of land for school purposes. *Buckwalter v. School District,* 65 Kan. 603, 70 Pac. 605 (1902), and *Devena v. Common School District,* 186 Kan. 166. The empowering statute in effect on the dates of both of these condemnation proceedings

considered in *Buckwalter* and *Devena* was G.S. 1889, Section 5591 (L. 1885, ch. 174, § 1). This enabling act authorized a school district to "obtain title to the site selected by such school district" and in any instance where the school district "had not acquired title" before a school building was erected on land it was authorized to condemn that land. Appraisal of the site was provided for in the act. The statute further provided, "And upon such payment being made to such county treasurer by such district board, the title to such site, or addition thereto, shall vest in such school district."

In both of these cases the court held the enabling act empowered the district to acquire *title* to a building site and that continued reference in the statute to acquisition of title authorized the taking of fee simple title.

Referring again to G.S. 1949, 72-4701 (1955 Supp.), which is the source of the power and authority of the school district in our present case, we find no reference to obtaining title, much less fee simple title. The references in prior statutes to obtaining *title* were entirely deleted from the statute when G.S. 1949, 72-4701 (1955 Supp.) was enacted. The statute, 72-4701, provided that the right of eminent domain may be invoked "for the purpose of appropriating private property for use for sites for school buildings" or for any other school purpose. The wording as to the interest to be acquired under this enabling act now under consideration is limited in nature. As pointed out in *Sutton v. Frazier,* 183 Kan. at 43, the legislature is capable of speaking with clarity when it intends that a condemning authority acquire fee simple title to real property taken under the power of eminent domain. No such authority is expressed in the statute under consideration.

The appellee school district makes several additional arguments in support of the trial court's decision. One argument is based upon the premise that the legislature did not intend to take away from school districts the right to acquire fee simple title when G.S. 1949, 72-4701 (1955 Supp.) was adopted. This argument is based upon legislative history surrounding the revision, where references were made by the legislative commission to a *revision* of the statutes and submission of the completed revision to the legislature *for reenactment.* We do not attach any great significance to these after-the-fact comments of the commission. They are too general in nature to bear upon the specific statute

with which we are now concerned. Also, when the specific enacting clause of the statute is referred to, the reference to a clarification and codification of certain laws governing school districts does not help to construe the extent and nature of the right of eminent domain authorized.

It is further argued that other statutory provisions in effect when the property was condemned authorized the school board to sell any schoolhouse, site, building or playground when lawfully directed by the qualified voters of the district. See G.S. 1949, 72-1023. The plain answer to that argument is that no authorization to sell property can enable a school district to dispose of property or an interest therein which the district does not own. We are concerned with acquisition through eminent domain proceedings. School districts may acquire fee simple title to property by deed, through purchase or gift. Such did not occur in our present case.

A final argument should be mentioned. The school district points out that it has invested somewhere close to $850,000.00 in these school buildings and, if title is held to revert, the former owners will receive an undeserved windfall. The original construction cost of these school buildings, now almost twenty years old, does not establish their present value. The necessary cost of remodeling school buildings for other uses may well exceed the cost of new construction. Also, it should be noted the school district may retain the use of this property so long as it desires to use the same for school purposes.

We hold a school district which condemned private property under authority of G.S. 1949, 72-4701 (1955 Supp.) for use as a site for school buildings, or any other school purpose, did not acquire the fee simple title to the land condemned. When said school district ceases to use the property for school purposes and abandons the same, title to the property reverts to the former owners, their heirs, and assigns.

Because of our decision as to the first issue it becomes necessary to consider the question of whether the plaintiff school district has abandoned the use of the property. The trial court found it unnecessary to address this issue because of its decision that title should be quieted in the school district. The petition states that the building continues to be used for school purposes, including offices for the Special Education Department of the

district, and for miscellaneous other school purposes including storage of equipment, library, and supplies. Whether this be true is a question of fact to be determined in the trial court since appellants contend the use has been abandoned. So long as the school district uses the property for school purposes it retains the right to continue such use. If it attempts to dispose of the premises or abandons the use of the property, title will then revert to the former owners.

The judgment of the trial court is reversed and the case is remanded for further proceedings in accordance with the opinions expressed herein.