SAMUEL GRIFFIN V. WILLIAM GESNER *et al.*

No. 16,141.   (97 Pac. 794.)

SYLLABUS BY THE COURT.

1. ELECTIONS—*Nomination by Primary—Contest.* Under the
provisions of the primary election law enacted at the special
session of the legislature held in the year 1908 the nomina-
tion of a candidate for member of the house of representa-
tives in a district comprising a single county may be con-
tested before the tribunal created by section 2703 of the
General Statutes of 1901.

2. ———— *Filing Objections—Limitation.* In such a case the
three days' time allowed for filing objections after the nomi-
nation papers have been lodged with the proper officer begins
to run from the filing of the certified determination of the
state board of canvassers with the secretary of state.

Original proceeding in mandamus. Opinion filed
October 10, 1908. Writ allowed.

*Troutman & Stone, S. I. Field,* and *D. M. Martin,* for
plaintiff.

*Noble & Tincher,* for defendants.

The opinion of the court was delivered by

BURCH, J.: At the primary election held on August
4, 1908, Samuel Griffin and William Gesner were rival
candidates for nomination on the republican ticket for
member of the house of representatives from the repre-
sentative district composed of Barber county. On the
face of the returns Gesner was successful. Griffin un-
dertook to institute a contest under section 2703 of the
General Statutes of 1901, which provides that objec-
tions or questions relating to nominations for officers
to be elected by the voters of a county shall be con-
sidered by the county clerk, clerk of the district court,
and county attorney. The officials named met as a
contest court, but declined to investigate the causes
for contest, and this proceeding in mandamus was com-

menced to compel them to do so. The case is finally
submitted upon a motion to quash the alternative writ,
which raises two questions: Has the contest court,
organized as stated, jurisdiction of the controversy?
And, if so, was it incumbent upon the contestor to make
his objections to the nomination of the contestee within
three days following the determination of the result of
the election by the county board of canvassers? Sec-
tion 10 of the new primary election law, which con-
stitutes chapter 54 of the Laws of 1908, reads in part
as follows:

"*Conduct of primary.* (1) The provisions of exist-
ing statutes concerning elections and any amendment
now or hereafter made thereto, so far as they are not
inconsistent with the provisions of this act, shall apply
to the primaries provided for in this act, and the fol-
lowing statutes shall apply to the subjects indicated,
the intent of this act being to place the primary under
the regulations and protection of the laws in force as
to elections.   .   .   .   As to county canvass of returns,
chapter 36, Laws of 1868, being paragraphs 2587, 2588,
2589, 2590, 2591, 2592, General Statutes of 1901; as to
state canvass of returns, chapter 36, Laws of 1868,
being paragraphs 2593, 2594, 2595, 2596, 2597 and
2598, General Statutes of 1901.   .   .   .   As to con-
tests, article 6, chapter 36, and paragraph 830, of the
General Statutes of 1901; provided, that all the powers
and duties conferred and imposed by the laws of this
state upon commissioners of elections, registration offi-
cers, judges and clerks of election, canvassing boards
and all other public officials in connection with general
elections are in every detail and particular conferred
and imposed upon each and all such officers in connec-
tion with the primary elections conducted under the
provisions of this act."

Legislation by reference to other acts sometimes pro-
duces decidedly crude statutes and frequently occasions
confusion and uncertainty in the law. Such legislation
is prohibited by the constitutions of some of the states,
but the method is not entirely condemned by the con-
stitution of this state. (*Wichita v. Telephone Co.,* 70

Kan. 441, 447, 78 Pac. 886.) When the references are as blind as they are in the primary election law it becomes a very difficult and perplexing thing for the people, for public officials and for the courts to know what the statutory provisions are upon the subjects involved.

In dealing with the subject of contests the statute quoted simply gorges article 6 of chapter 36 of the General Statutes of 1901. The most cursory consideration of this article reveals its general inadaptability to contests arising under the primary election law, but so far as controversies like this are concerned it is absolutely unworkable unless there should be a timely session of the legislature, because it provides that contests relating to membership in the house of representatives are to be tried by that body.

On behalf of the defendants it is urged that, the subject of contests having been covered by an express provision of the primary election law, and that provision being useless, further endeavor toward a contest should cease. The express reference in the statute to contests puts it beyond well-founded contradiction that the legislature intended there should be a statutory remedy of that character. Whether fairness and justice require that there should be an opportunity to test the validity of a primary nomination in this way, and what course the courts themselves might pursue if no statutory procedure were prescribed, need not engage attention. In order that the will of the people may prevail the legislature has clearly indicated its purpose that the formal returns of the result of a primary election which do not correctly exhibit the expression of that will may be overridden by means of a contest. Finding a contest code on the statute-book, the legislature adopted it, but did not stop there. Both before and after the reference in section 10 to article 6 of chapter 36 of the General Statutes of 1901 there are clear statements that all existing laws applicable to the subject of general elec-

tions are brought to bear upon the subject of primary elections, so far as they are consistent with the primary election law. These statements are as explicit and as mandatory as those adopting the article just referred to, and the court is bound to search all the statute-books for general election laws which may be adapted to the fulfilment of the uses and purposes of the primary election law.

The matter of bringing upon the official ballot the names of the persons to be voted for is of course a subject of paramount importance under the election laws. The act known as the "Australian ballot law" (Gen. Stat. 1901, ch. 36, art. 9) deals with the subject. The primary election law subjects certain matters to the regulations contained in parts of this article. Other parts govern subjects referred to in the primary election law, and still others concern important matters which must arise and must be disposed of the same as before the primary election law was enacted. None of the provisions of this article is expressly repealed by the primary election law, and under the well-settled canons of construction none of them consistent with that law is impliedly repealed, even if they had not been expressly adopted by and incorporated into that law. Everything is saved that can be utilized in meeting exigencies arising in the accomplishment of the purposes of the primary election law.

The Australian ballot law contains the provision which was invoked by the plaintiff in his effort to contest his opponent's nomination and which reads as follows:

"The certificate of nomination and nomination papers being so filed, and being in apparent conformity with this act, shall be deemed to be valid, unless objection thereto is duly made in writing within three days from the date said papers are filed with the proper officers. Such objections or other questions arising in relation thereto, in the case of nominations of state officers or officers to be elected by the voters of a division less

than a state and greater than a county, shall be considered by the secretary of state, auditor of state, and attorney-general, and a decision of a majority of these officers shall be final. Such objections or questions arising in the case of nominations for officers to be elected by the voters of a county or township shall be considered by the county clerk, clerk of the district court, and county attorney; and the decision of a majority of said officers shall be final." (Gen. Stat. 1901, § 2703.)

The adaptability of this section to the plaintiff's needs manifestly depends upon what is meant by a certificate of nomination or nomination papers, and their filing with some proper officer. Primary elections were recognized as lawful methods of nominating candidates for office before the new law became effective. (See Laws 1891, ch. 115; Gen. Stat. 1901, §§ 2743-2750.) The Australian ballot law is framed in accordance with this fact. Omitting portions plainly rendered ineffectual by the new law, sections 2696 and 2697 of the General Statutes of 1901 contain the following provisions pertinent to this controversy:

"All nominations made by political parties shall be known and designated as 'party nominations,' and the certificates by which such nominations are certified shall be known and designated as 'party certificates of nomination.' Party nominations of candidates for public office can be made only by a . . . primary election.

"Any political party having a state or national organization, by means of a . . . primary election . . . may, for the state or municipality, or any lawfully organized portion of either, for which such . . . primary election . . . is held, nominate one person for each office that is to be filled therein at the next ensuing election, and . . . file a certificate of such nomination so made. . . . Where such nominations are made by primary election, the certificate shall be signed by the members of the board of canvassers to which the returns of such primary election are made."

Section 2698 relates to "independent nominations,"

distinguishes them from "party nominations" as defined in section 2696, and provides for the filing of "independent certificates of nomination." Section 2 of the primary election law allows independent nominations to be made by nomination papers signed and filed as provided by existing statutes. (Laws 1908, ch. 54.) Section 2698 of the General Statutes of 1901 is of course one of these statutes, and its meaning would not be clear unless read with sections 2696 and 2697. The very purpose of the primary election law is to regulate the organization and government of political parties and to regulate party nominations to office. Therefore, under the rule of construction adopted, the portions of sections 2696 and 2697 quoted above are still the law if anything can be found in the primary election law fairly analogous to a certificate of nomination signed by the members of a board of canvassers to which the returns of a primary election are made and filed with some proper officer.

As shown by the quotations from it, section 10 of the primary election law adopts the provisions of the general election law with reference to the county and state canvass of election returns. Sections 13 and 14 duplicate the work of adoption, as appears by the following extracts:

"SEC. 13. *Canvass of votes and returns.* (1) The canvass of votes cast shall, except as herein otherwise provided, be made in the same manner and by the same officers as the canvass of an election. . . . (3) The county canvass of the returns of a primary shall be made by the same officers and in the same manner provided in section 10 of this act."

"SEC. 14. *State board of canvassers.* (1) The state board of canvassers provided to canvass the returns of a November election shall constitute the state board of canvassers of the primaries held under the provisions of this act and all the provisions of section 10 of this act, and of all existing statutes, and any amendments now or hereafter made thereto, relating to the canvass of the return of the November election, shall,

as far as applicable, apply to the canvass, return and certification to the secretary of state of such primary. . . . (2) As soon as the state canvass of a primary shall be completed, the secretary of state shall publish in the official state paper a certified statement of the result of such primary as to candidates for state officers, United States senator, representatives in congress, state senators and state representatives, and all candidates whose districts extend beyond the limits of a single county."

The ultimate question, therefore, is whether the general election law provides for anything corresponding to a certificate of nomination like that contemplated by sections 2697 and 2703. The answer is to be found in sections 2587 to 2598, inclusive, of the General Statutes of 1901, which need be referred to only so far as members of the house of representatives are concerned. The county board of canvassers opens the precinct returns and determines who has received the greatest number of votes. This determination is reduced to writing, signed by the members of the board, and attested by the clerk, and then is attached to an abstract of all the votes cast (§ 2587), which the county clerk is required to make, certify, and file in his office (§ 2590). A copy of this abstract is then forwarded to the secretary of state (§ 2590), who opens it, files it, and records it (§ 2594). Sections 2596 and 2598 then provide as follows, modifications to meet the requirements of the primary election law being indicated by words in brackets:

"SEC. 2596. For the purpose of canvassing the result of [primary] elections the state board of canvassers shall meet at the office of the secretary of state [at 10 o'clock A. M. on the third Tuesday of August, 1908, and biennially thereafter], when they shall, upon the certified abstracts on file in the office of secretary of state, proceed to examine and make statement of the whole number of votes given at any such election for state officers, justices of the supreme and judges of the district courts, the members of the senate and house of

representatives, representatives in congress, and electors of president and vice-president of the United States, or for so many of said officers as may have been voted for at such election, which statement shall show the names of the persons to whom such votes shall have been given for either of the said offices, and the whole number given to each, distinguishing the several districts and counties in which they were given; they shall certify such statements to be correct, and subscribe their names thereto, and they shall thereupon determine what persons have been, by the greatest number of votes, duly [nominated] to such offices, or either of them, and shall indorse and subscribe on such statements a certificate of such determination, and . . . deliver them to the secretary of state."

"SEC. 2598. The secretary of state shall record in his office, in a book to be kept by him for that purpose, each certified statement and determination as made by the board of state canvassers, and shall without delay make out and transmit, to each of the persons thereby declared to be [nominated] a certificate of his [nomination], certified by him under his seal of office; and he shall also forthwith cause a copy of such certified statement and determination to be published in a newspaper published at the seat of government."

It requires no argument to demonstrate that the certificate determining who has been by the greatest number of votes duly nominated, indorsed in writing on the statement of the result of the canvass, and subscribed by the members of the board of canvassers, is the full equivalent of a certificate of nomination by primary election under section 2697, and that its delivery to the secretary of state is a filing with a proper officer under section 2703.

It is true that under the old law the persons signing such a certificate attached to it an oath that the statements made therein were true to the best of their knowledge and belief. Primary elections were then voluntary affairs with the various political parties of the state, and the statutory guaranties of a fair election, including this oath, were not numerous. Now that the

whole machinery of the election is placed in the hands of regularly elected and qualified public officers, an official certificate is certainly as much of a safeguard as the oath of a volunteer partisan, and the requirement of an oath may be considered as superseded by the express adoption of the official canvass law.

The phrase in section 2697—"the board of canvassers to which the returns of such primary election are made"—is to be interpreted in the light of the conditions to which the old law applied and the radical changes wrought by the new law. In each case the board having final authority to declare the result of the election was intended. This board is now the state board of canvassers, so far as members of the house of representatives are concerned.

The point is made that subdivision 4 of section 13 of the primary election law requires the county canvassers to make a duplicate return of the canvass of the votes for candidates not voted for wholly within the limits of a county, a copy of which the county clerk must send to the secretary of state by registered mail, while nothing of the kind was inserted relative to members of the legislature whose districts comprise only a single county, the argument being that the subject of returns to the state board of canvassers relating to some offices having been adverted to no others are to be made. The argument is answered by the statute itself. According to the opening sentence of section 13 and other of its provisions the general election law stands except as otherwise provided, so that the rule of *expressio unius,* etc., does not control.

It is contended that the contest court created by section 2703 was never concerned with anything except matters relating to the preparation of ballots preliminary to an election, and that it was never designed to try a contest over the result of an election. It is conceded that the section is unrepealed, and that the court provided for may still be utilized for the determina-

tion of questions relating to nomination papers like party petitions and independent certificates of nomination, but it is said that the functions of the contest court originally ceased with the final construction of the ballot to be voted at the election for which it was prepared. This argument overlooks the fact that the ballot involved was always the ballot to be used in the November election, and that one of the preliminaries to the preparation of that ballot might, under the old law, be a party nomination made through the medium of a primary election. The old primary law was very meager, but it did contemplate primary elections, and provided for certificates of nomination to be signed by the members of the boards of canvassers to which the returns of the primary were made. There can be no doubt that formerly, upon proper objection being duly made, matters affecting the integrity of such a certificate of nomination could be investigated and decided by this contest court. The new primary law, elaborate, state wide and compulsory, is merely a substitute for the old, and the functions of the contest court, which in the preparation of the new law the legislature saw fit to allow to stand, are precisely the same as they were before.

It follows from what has been said that the three days' time allowed for filing objections to a nomination after the papers have been lodged with the proper officer begins to run, in the case of a member of the house of representatives, from the filing of the certified determination of the state board of canvassers with the secretary of state.

The peremptory writ is allowed.