No. 54,518

STATE OF KANSAS, *ex rel.,* ROBERT T. STEPHAN, ATTORNEY GENERAL, *Petitioner,* v. BOARD OF EDUCATION OF UNIFIED SCHOOL DISTRICT 428, BARTON COUNTY, KANSAS, *Respondent.*

(647 P.2d 329)

Opinion filed June 30, 1982.

*Robert T. Stephan,* attorney general, and *Jeffrey S. Southard,* assistant attorney general, for the petitioner.

*Robert L. Bates,* of Hagen, Bates & Suelter, of Great Bend, for the respondent.

The opinion of the court was delivered by

FROMME, J.: This is an original action in mandamus brought by the State of Kansas on relation of the attorney general asking this court to issue an order or writ to compel the Board of Education of Unified School District No. 428, Barton County, Kansas, to provide the students of that district with bus transportation. We are asked to hold that the Board must "provide or furnish transportation" by owning and operating its own vehicles or by contracting with a public or private carrier to transport the students.

In response to the petition, the Board argues that the present statutes relating to the transportation of students authorize the Board to "provide or furnish transportation" either by transporting the students by bus or by providing for reimbursement of those persons who furnish transportation in privately owned automobiles.

The facts leading to the present action are not in dispute and in summary are substantially as follows:

The Board of Education of Unified School District No. 428 (the Board) on unification accepted the territory of a separate school district known as Bissell's Point located in the northeastern portions of the county and of the unified district. Prior to unification the Bissell's Point School District operated a bus system. Other districts in the area of the unified district No. 428 did not. Following unification this practice continued. Bus service was provided only in the area formerly in the Bissell's Point School District.

In June, 1981, the Board, which is the respondent herein, voted to discontinue bus service to pupils residing in that portion of the district known as the Bissell's Point area, effective with the beginning of the 1982-83 school year.

The Board notified the parents and guardians of pupils who would be affected by this action that the Board would contract with them for the transportation of their children at a reasonable rate per mile. During the fall of 1981, the Board distributed a questionaire to parents and guardians of pupils in the Bissell's Point area who were eligible to receive either bus transportation or mileage reimbursement. Results of this questionnaire showed that over two-thirds of those responding favored mileage reimbursement over bussing.

In the fall of 1981, the Board requested a legal opinion from the Attorney General as to the extent of its duty in providing or furnishing transportation under the applicable statutes. The Attorney General issued a formal opinion advising the Board it had an affirmative duty to provide bus transportation, and could not employ mileage reimbursement contracts except under limited special circumstances.

The Board sought and obtained an estimate of the amount of original outlay it would take to establish bus transportation in the district. The business manager of the district estimated the cost to

be $350,000.00 to $500,000.00. The Board reaffirmed its earlier decision to end bus service in the Bissell's Point area and to substitute mileage reimbursement contracts for the entire unified district. The present action by the Attorney General followed.

The petitioner and the respondent Board have filed separate memoranda of arguments and authorities. In addition the petitioner has filed a response to respondent's memorandum.

Because of the press of time on school district budget questions and other critical factors which are concerned in any decision of this court, we have considered the arguments and authorities cited by both parties, and have decided that oral arguments are not necessary. A decision in this matter must rest in large part on a construction of certain statutes which govern the transportation of students by school districts.

The definitions section, K.S.A. 72-8301(c), states:

"(c) The words 'provide or furnish transportation' in addition to their ordinary meaning shall mean and include the right of a school district to: (1) Purchase, operate and maintain school buses and other motor vehicles; (2) contract, lease or hire school buses and other motor vehicles for the transportation of pupils, students and school personnel; (3) purchase, operate and maintain buses other than school buses for the transportation of pupils, students or school personnel to or from school-related functions or activities; (4) contract, lease or hire buses other than school buses for the transportation of pupils, students and school personnel if said buses are owned and operated by a public common carrier of passengers under a certificate of convenience and necessity granted by the state corporation commission or the interstate commerce commission and are operating within the authority granted to said public common carrier; and (5) reimburse persons who furnish transportation to pupils, students or school personnel in privately owned motor vehicles." Emphasis supplied.

K.S.A. 1981 Supp. 72-8302 relating to the transportation of students in pertinent part reads:

"(a) The board of education of any school district may provide or furnish transportation for pupils to or from any school of the school district. Every school district shall provide or furnish transportation for every pupil who resides in the school district and who attends any of grades kindergarten through twelve at a school of the school district subject to the conditions specified in provision (2) and to any one of the following conditions:

"(1) (A) The residence of the pupil is inside or outside the corporate limits of a city, the school building attended is outside the corporate limits of a city and the school building attended is more than 2 ½ miles by the usually traveled road from the residence of the pupil, or

"(B) the residence of the pupil is outside the corporate limits of a city, the school building attended is inside the corporate limits of a city and the school attended is more than 2 ½ miles by the usually traveled road from the residence of the pupil, or

"(C) the residence of the pupil is inside the corporate limits of one city, the school building attended is inside the corporate limits of a different city and the school building attended is more than 2 ½ miles by the usually traveled road from the residence of the pupil." Emphasis supplied.

K.S.A. 72-8303 authorizes the boards of education to prescribe the routes over which transportation of its students is to be provided on a daily basis.

The sharpest conflict between the parties seems to arise from their differing construction of K.S.A. 72-8304 which states:

"In those cases where it is impracticable to reach a student's residence by the prescribed transportation route, and where such residence is more than one mile by road from the prescribed route; and in those cases where it is impracticable to schedule a school bus for the transportation of a student; the board of education may contract for the transportation of such student to the regularly prescribed school route or to the school building. Such contracts shall provide for the payment of mileage at a rate not to exceed the rate specified in K.S.A. 1972 Supp. 75-3203 and any amendments thereto for each mile actually traveled; shall be limited to two round trips per day on a route prescribed by the board of education; and shall be subject to any rules or regulations adopted by the board of education. In those cases, where more than one student is transported in the same vehicle, mileage shall be paid for only one student."

We note in passing that K.S.A. 1972 Supp. 75-3203 as amended, as referred to in the above statute, authorizes the Secretary of Administration to fix the rate of mileage to be paid to public officials. So, under K.S.A. 72-8304 boards of education may set the rates for payment of mileage for students at a rate not to exceed the rate fixed annually by the secretary.

In determining the legislative intent for the purpose of statutory construction the historical background and changes made in a statute are to be considered by the court, and any changes and additions made in existing legislation raise a presumption that a change in meaning and effect was intended. *Shapiro v. Kansas Public Employees Retirement System,* 211 Kan. 452, Syl. ¶ 2, 507 P.2d 281 (1973); *Southeast Kansas Landowners Ass'n v. Kansas Turnpike Auth.,* 224 Kan. 357, 367, 582 P.2d 1123 (1978).

Two prior cases of this court have been decided which concern the question of school transportation. They are: *Harkness v. School District,* 103 Kan. 573, 175 Pac. 386 (1918), and *Kimminau v. Common School District,* 170 Kan. 124, 223 P.2d 689 (1950). Under the statutes in effect when those cases were decided this

court held that the district had an option to pay the persons transporting pupils or to furnish transportation by bussing.

*Kimminau* was decided under the laws which later appeared in the General Statutes of 1949. 72-609 through 72-612 provided for transportation and for the establishment of bus routes to accommodate elementary and high school pupils. 72-614(3) defined the words "provide or furnish transportation" to mean and include the right of the school district to contract or hire buses, "in addition to their ordinary meaning." 72-615 authorized the governing body of any school district to provide or furnish transportation to and from school. 72-621 provided that if the district board did not provide transportation for all elementary and kindergarten pupils who resided two and one-half miles or more from the school, that the district was required to pay to the person transporting any such pupil mileage at the rate of five cents per mile. Under 72-617 when the district furnished bus transportation and established regular routes, special provision was made for payment of mileage in those instances where it was impracticable to reach students in "out-of-the-way places." For any student required to be transported to school under 72-621, who lived more than a mile from the regularly established bus route, the district was required to pay the person transporting them to and from the bus route five cents per mile.

We note that a complete repeal and recodification of the above sections of G.S. 1949, ch. 72, art. 6 occurred in 1968. See L. 1968, ch. 401, §§ 1 through 13. The new codification of these laws concerning the transportation of students first appeared in K.S.A. 1969 Supp. 72-8301 *et seq.*

In K.S.A. 1969 Supp. 72-8302 appears the requirement that the school district provide or furnish transportation for all students who reside more than two and one-half miles from public school. Under the definition section in the statute (72-8301[c]) the term "provide or furnish transportation" covered both bussing and mileage reimbursement. 72-8303 authorized laying out bus routes, and 72-8304 provided that in those cases where it was impracticable to reach a student's residence by a prescribed bus route and where the residence was more than a mile from the route, the board of education was to contract with the persons furnishing transportation for mileage reimbursement either to the bus route or to the school building. The only change in this section from 1968 to the present was in 1973 when the rate of nine

cents was eliminated and the present provision was inserted permitting the board to set the rate of not more than the amount fixed by the Secretary of Administration for public officials.

Now turning to the provisions of present statutes governing the transportation of students, we direct our attention to K.S.A. 72-8301, 72-8303, 72-8304 and to K.S.A. 1981 Supp. 72-8302. In construing statutes the legislative intention should be determined from a general consideration of the whole act, and effect must be given, if possible, to the entire statute and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. *Southeast Kansas Landowners Ass'n v. Kansas Turnpike Auth.,* 224 Kan. at 367, 368.

The petitioner contends that 72-8304 limits the circumstances under which mileage reimbursements may be paid, and that payment can be made only when one of the two situations mentioned in the statute exist: first, when it is impracticable to reach a student's residence by the prescribed transportation routes and the pupil resides more than one mile off the route; second, when it is impracticable to schedule a school bus for the pupil's transportation. Petitioner argues if the district is free to pay mileage for all eligible pupils the first part of the statute, *i.e.,* that part limiting payment to situations where the student resides more than a mile from the regular route and where it is impracticable to reach the residence by bus route, is superfluous. We do not agree.

We see no great change in substance wrought by the 1968 recodification. There was a rearrangement, some much needed deletions, and a condensing of various sections. However, the definition of the term "provide or furnish transportation" continues to include both transportation by bus (K.S.A. 72-8301[c][2], [3], and [4]) as well as a provision for mileage reimbursement (K.S.A. 72-8301[c][5]).

The present authorizing statute, K.S.A. 1981 Supp. 72-8302, condenses several of the prior laws and makes mandatory the providing or furnishing of transportation for pupils who reside in the school district, attend grades kindergarten through twelve, and who reside more than two and one-half miles from the schoolhouse with some limited exceptions for those living and attending schools in cities.

As we read K.S.A. 72-8304 it has a definite place in the scheme for transportation of pupils, and it is not superfluous. The board must decide what bus routes to prescribe, if any. If no bus routes are prescribed, mileage reimbursement contracts must be entered into with the persons who furnish transportation to pupils in privately owned motor vehicles as mandated by K.S.A. 1981 Supp. 72-8302.

However, where transportation routes for buses are prescribed pursuant to K.S.A. 72-8303 there are bound to be instances when it is impossible to run a bus to the residence of every pupil attending the school. Both distance and time consumed en route will determine when it becomes impracticable to reach a student's residence. When transportation routes have been prescribed and when the prescribed transportation route does not come within a mile of a pupil's residence then and in that event the first part of K.S.A. 72-8304 comes into the picture. In that event the mileage reimbursement provisions require mileage reimbursement for students living more than one mile from the route. The rate per mile is limited not to exceed the amount set annually by the Secretary of Administration. Payment is limited to two round trips per day on a route prescribed by the board of education. The route prescribed by the board may be to the regular bus transportation route or to the school building.

In view of the provisions of the present statutes and considering the lack of substantive changes in the 1968 recodification we are of the opinion the ultimate holdings with regard to providing and furnishing transportation in *Harkness v. School District*, 103 Kan. 573, and *Kimminau v. Common School District*, 170 Kan. 124, were not changed by the recent statutes.

Under the provisions of K.S.A. 72-8301 *et seq.* regarding the transportation of students the board of education of a school district may fulfill its obligation to "provide or furnish transportation" for students (1) by furnishing bus transportation over prescribed routes, (2) by reimbursing persons who furnish transportation in privately owned motor vehicles, or (3) by a combination of bus transportation and mileage reimbursement.

Petition denied.