No. 52,203

THE BOARD OF EDUCATION OF UNIFIED SCHOOL DISTRICT 512, *Plaintiff-Appellee,* v. VIC REGNIER BUILDERS, INC. and DENNIS L. STEELE AND FRANCES STEELE, *Defendants-Appellants.*

(648 P.2d 1143)

Opinion filed July 22, 1982.

*H. Thomas Payne,* of Payne & Jones, Chartered, of Olathe, argued the cause, and *L. Franklin Taylor,* of the same firm, *Elmer Hoge,* of Overland Park, and *James T. Britt,* of Spencer, Fane, Britt & Browne, of Kansas City, Missouri, were with him on the briefs for the appellants.

*Robert F. Bennett,* of Bennett, Lytle, Wetzler, Winn & Martin, of Prairie Village, argued the cause and was on the briefs for the appellee.

*Dennis McFall,* of Topeka, was on the brief for *amicus curiae,* Kansas Association of School Boards.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the plaintiff, Board of Education of Unified School District No. 512, to quiet its title to certain real estate located in Johnson County on which certain school buildings are located. The action was brought against the

defendants, Vic Regnier Builders, Inc., Dennis L. Steele and Frances Steele, former owners of the real estate who had been divested of title in eminent domain proceedings in 1956 and 1959. The basic issue to be decided is whether the eminent domain statute, G.S. 1949, 72-4701 (1955 Supp.), under which title was acquired by the district, authorized the taking of a fee simple title. The district court held that the school district acquired fee title and that the plaintiff's title should be quieted against the claims of the defendants as former owners. The defendants appealed to the Court of Appeals which reversed the district court in a published opinion in *Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc.,* 6 Kan. App. 2d 888, 636 P.2d 802 (1981). The Supreme Court granted the school district's petition for review.

The undisputed facts are set forth in the decision of the Court of Appeals and are as follows: In 1956, the predecessor of U.S.D. 512 acquired the property of the defendants, Dennis L. Steele and Frances Steele, for a school site by right of eminent domain under G.S. 1949, 72-4701 (1955 Supp.). The parties do not question the regularity of those proceedings, only the extent of the title acquired. The pleadings in the condemnation action merely alleged it was necessary to *appropriate and acquire* the private property *for use for a site for a school building.* The appraisers appraised the land and assessed damages both for the value of the tract and for severance. The journal entry provides that upon payment of $15,000, plus court costs and appraiser's fees, the title to said lands shall immediately vest in the school district. The amount was paid into court and the school district proceeded to construct a building thereon.

In 1959, three years later, the predecessor of U.S.D. 512 commenced a similar proceeding to acquire certain property of defendant Vic Regnier Builders, Inc., which was adjacent to the property previously acquired from the Steeles. The eminent domain proceedings were undertaken pursuant to the authority of G.S. 1949, 72-4701 (1955 Supp.), as before, and the petition alleged the necessity for appropriating the property for the lawful purposes of the school district. The journal entry recited that the district had the right of eminent domain for the purpose of appropriating the land described in its petition to be used as an addition to and an extension of its present school building site.

The appraisers valued the land and set damages at $10,500. The amount was paid into court and the school district has since held possession of the property. The parties do not question the regularity of these proceedings, only the extent of the title acquired.

As a result of these two condemnation proceedings, the plaintiff's predecessor acquired the property, constructed a school building, and added to the school building site. It appears from the briefs in the case that the school district expended in excess of $850,000 for construction and additions to the school building. The property so condemned became part of the Marsha Bagby Grade School Attendance Center.

Thereafter, the number of students attending at this attendance facility dropped, and in 1978 the electors within the area voted to close the school since it was no longer needed as an attendance facility. Plaintiff alleges in its petition that the building continues to be used for school purposes, including the offices for the Special Education Department of the district, and that the school board now desires to clear title to the real estate so that the property may be sold or otherwise disposed of. The defendants answered and alleged that the school district acquired only the right to use the two parcels of land as a site for school buildings and for other school purposes. They further allege that the property has been abandoned, that it is no longer being used for the purposes authorized, and that, when abandoned, the title to the property reverts to the former owners, the defendants.

Simply stated, the basic issue presented in the case is whether the plaintiff school district acquired the fee title to the property in the two condemnation proceedings held in 1956 and 1959. As noted above, the district court held that it did, and the Court of Appeals held that it did not. As will be obvious in the course of the opinion, the issue presented is not without difficulty and there is a fair and reasonable argument to be made on both sides.

Before turning to a solution of our problem, it would be helpful to consider some of the basic principles of law recognized and applied by the courts in determining the extent of the interest acquired by a condemner in an eminent domain proceeding. There is an extensive discussion on the subject of the title acquired by eminent domain in Chapter 9 of 3 Nichols on Eminent Domain (3rd ed. rev. 1981) commencing at Section 9.1. In that

chapter, the author cites many cases throughout the country, including Kansas cases, recognizing the following general principles:

(1) The general rule is that only such an estate in the property sought to be acquired by eminent domain may be taken as is reasonably necessary for the accomplishment of the purpose in aid of which the proceeding is brought. *Carpenter v. Fager,* 188 Kan. 234, 361 P.2d 861 (1961); *Sutton v. Frazier,* 183 Kan. 33, 325 P.2d 338 (1958); *Federal Farm Mortgage Corp. v. Smith,* 149 Kan. 789, 89 P.2d 838 (1939); *County of Shawnee v. Beckwith,* 10 Kan. *603 (1873).

(2) Unless there is a constitutional inhibition upon the power of the legislature in this respect, the latter has the sole power to determine what shall be acquired both as to the quantum and quality of estate. The Kansas Constitution places no limitations or restrictions on the title of land which may be acquired by the process of eminent domain. Thus, the legislature has the full power to determine the nature of the title to be so acquired by the condemner. *Devena v. Common School District,* 186 Kan. 166, 348 P.2d 827 (1960); *Sutton v. Frazier,* 183 Kan. 33; *State, ex rel., v. State Highway Comm.,* 163 Kan. 187, 182 P.2d 127 (1947).

(3) The general rule is that eminent domain statutes will be construed to authorize only the taking of an easement on or title to land sufficient for the public use intended rather than a fee title, unless the statute clearly so provides, either expressly or by necessary implication. *Sutton v. Frazier,* 183 Kan. at 41; *State, ex rel., v. State Highway Comm.,* 163 Kan. 187. No precise words are necessary in a statute to authorize condemnation of a fee simple absolute, nor is it necessary that the authority to take a fee be given in express terms. *Devena v. Common School District,* 186 Kan. 166; *Buckwalter v. School District,* 65 Kan. 603, 70 Pac. 605 (1902).

(4) In the absence of express or precise provisions, the intention of the statute and the construction to be put upon its terms may be gathered from its general scope and tenor, and the nature of the public use for which the condemnation is authorized. If the legislative intention to vest the fee is thus made clear, and this intention is consistent with the language employed, effect will be given to the intention. This is especially true where a remaining private ownership is inconsistent with the use for which the land

is taken, and where the purposes of the condemnation will not be satisfied by the taking of a lesser estate or easement. *Wood v. City of Mobile,* 107 F. 846 (5th Cir. 1901); *United States v. 635.76 Acres of Land, Etc., Arkansas,* 319 F. Supp. 763 (W.D. Ark. 1970).

(5) If a public easement has been taken which is subsequently discontinued or abandoned, the land reverts to the owner of the fee, free from any rights of the public. *Federal Farm Mortgage Corp. v. Smith,* 149 Kan. at 791; *Skelly Oil Co. v. Kelly,* 134 Kan. 176, 180, 5 P.2d 823 (1931).

(6) When a fee simple title, free from any easement or conditions, is acquired by the exercise of the power of eminent domain, if the use for which the land was condemned is lawfully discontinued or abandoned, there is no reversion and the condemner may devote it to other uses or sell it in the same manner as an ordinary private owner. *Skelly Oil Co. v. Kelly,* 134 Kan. 176.

(7) As a general rule, where land is taken for construction of a public building, the fee is taken, but for other public uses only an easement is deemed to have been acquired. 3 Nichols on Eminent Domain § 11.209. In cases involving schoolhouses, the decisions in other states disagree. Some hold that the school district acquires a fee simple title; other cases hold to the contrary. For example, see *Carter v. Davis,* 141 Okla. 172, 284 Pac. 3 (1929), and *Valentine v. Lamont,* 13 N.J. 569, 100 A.2d 668 (1953). The only Kansas cases involving schoolhouse sites held the school district acquired the fee title. *Buckwalter v. School District,* 65 Kan. 603, and *Devena v. Common School District,* 186 Kan. 166.

From the general principles stated above, it is obvious that the various courts confronting the issue have been primarily concerned with the statutory construction and the legislative intent in each particular case. Likewise, in the present case, we must construe the various statutes on the subject in arriving at a solution to our problem. In so doing, we must keep in mind that the fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted. *Farm & City Ins. Co. v. American Standard Ins. Co.,* 220 Kan. 325, Syl. ¶ 3, 552 P.2d 1363 (1976). In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical

background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. *Brown v. Keill,* 224 Kan. 195, Syl. ¶ 3, 580 P.2d 867 (1978). In order to ascertain the legislative intent, courts are not permitted to consider only an isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia.* 224 Kan. at 200.

Another principle of law well recognized in Kansas is that a statute should never be given a construction that leads to uncertainty, injustice or confusion if it is possible to construe it otherwise. *Coe v. Security National Ins. Co.,* 228 Kan. 624, 620 P.2d 1108 (1980); *Whitehead v. State of Kansas Labor Department,* 203 Kan. 159, 162, 453 P.2d 11 (1969). Furthermore, courts are not bound to an examination of the statutory language alone, but may properly inquire into the causes which impel the statute's adoption, the objectives sought to be attained, the statute's historical background, and the effect the statute may have under the various constructions suggested. *State, ex rel., v. Kalb,* 218 Kan. 459, 464, 543 P.2d 872 (1975); *State, ex rel., v. City of Overland Park,* 215 Kan. 700, 527 P.2d 1340 (1974).

Ordinarily, there is a presumption that a change in the language of a statute results from the legislative purpose to change its effect, but this presumption may be strong or weak according to the circumstances, and may be wanting altogether in a particular case. The presumption is fairly strong in the case of an isolated, independent amendment, but is of little force in the case of amendments adopted in a general revision or codification of the law. *Confinement Specialists, Inc. v. Schlatter,* 6 Kan. App. 2d 1, 626 P.2d 223, *rev. denied* 229 Kan. 669 (1981); *Hauserman v. Clay County,* 89 Kan. 555, 558, 132 Pac. 212 (1913).

We turn now to the question of the power of a school district in this state to acquire fee title to land taken by eminent domain. There is no question that prior to 1951 a school district which condemned land for the purpose of constructing a school building acquired a fee title to the property. Public ownership of school lands has been deeply ingrained in the fabric of Kansas law as the public policy of this state since the beginning. We believe that, in order to properly determine this case, we should review the Kansas law on the subject, commencing in 1854 when

the subject of public ownership of school lands was provided for in Section 34 of the Act to Organize the Territory of Kansas enacted by Congress in that year. Organic Act of May 30, 1854, ch. 59, 10 Stat. 289. Section 34 reserved sections 16 and 36 in each township in the Kansas territory for the purpose of being applied to schools in the territory and in the state thereafter to be erected out of the same. There was a similar provision in Section 3 of the Act for the Admission of Kansas into the Union, Act Jan. 29, 1861, ch. 20, 12 Stat. 127. In *State v. Stringfellow*, 2 Kan. *263 (1864), it is stated on page *320 that the object of the provision in § 34 of the Organic Act was to furnish the basis of a perpetual fund for the benefit of the people who should inhabit the country for the use of schools. It is further stated that a sale of these lands, or at least a portion of them, must have been contemplated. The proceeds of such sales were to be applied to the use of schools in the township in which the lands sold might be situated.

Chapter 122, Laws of Kansas 1874, and Chapter 174, Laws of Kansas 1885, provided for the condemnation of land for school-house sites by providing, in substance, that in case any school district cannot, by purchase at reasonable rates, or by donation or otherwise, obtain title to the site selected by such school district, upon written application of the district board of the school district, it shall be the duty of the probate judge of the county in which such school district is situated to appoint three disinterested freeholders to condemn and appraise such site or additions thereto. Following the filing of the report of the appraisers, the school district board was required to pay to the county treasurer of the county in which the condemned land was situated the amount of the appraised value. The statute then provided that, upon such payment being made to such county treasurer by such district board, the title to such land shall vest in such school district. This provision was later incorporated into § 6131 of the General Statutes of Kansas of 1901.

In the case of *Buckwalter v. School District,* 65 Kan. 603, in 1902, the Supreme Court interpreted that section to afford a school district the power of acquiring the fee interest in land taken by condemnation for a school site. The court, in reaching this decision, relied upon the provisions of the law that, upon payment being made by the district board, the title to such site "shall vest in such school district." In the case of *Devena v.*

*Common School District,* 186 Kan. 166, in 1960, the issue presented was whether a common-school district in the exercise of the power of eminent domain in a suit filed for the purpose of acquiring a schoolhouse site filed in 1893 under this same statute, vested in the school district the fee simple title to the land taken. In an unanimous decision, this court held that it did, leaving no reversion or other interest in the landowner. The court in *Devena* relied on the prior decisions in *Buckwalter v. School District,* 65 Kan. 603, and *Skelly Oil Co. v. Kelly,* 134 Kan. 176, a case involving condemnation of land by a city for a park. The court, in *Devena,* recognized that the extent of the interest which the school district acquired must be determined by the empowering statute then in force and effect. It is important to note that this 1889 statute declared not only the authority for the school district to exercise the power of eminent domain but also provided, within the statute itself, the procedure for condemnation of a school site. It was the procedural section of the statute which provided that, upon payment of the appraised value, the title to the site should vest in the school district.

Since the decisions of this court in *Buckwalter* and *Devena,* there has not been a single case in the Kansas appellate courts holding that a school district which condemns property for a school site does not obtain fee title to the land condemned, until the decision of the Court of Appeals was filed in this case on November 25, 1981. This is true in spite of numerous statutory changes involving the powers of school districts. It would be helpful to review these various statutory amendments.

The legislature in Chapter 86, Laws of 1909, Section 1, conferred the right of eminent domain upon certain boards of education. Sections 2, 3, and 4 of the same act provided *the procedure* to be followed in the exercise of that right. Section 4 provided that within 30 days after the commissioners' appraisal report was filed, the school board could pay the county treasurer, for the use of the owner of such land, the amount of the appraised value and the title to such land so condemned and appropriated shall immediately vest in such board of education and it shall have the right to take possession or occupy and use the same. It must be emphasized that in this 1909 statute, as in the 1874 and 1885 statutes, the power of eminent domain was given to school boards and the procedure for its execution was included as different

sections in a single enactment. Chapter 86 of the Laws of 1909, §§ 1, 2, 3, and 4, was included in G.S. 1909 as §§ 7859 through 7862. These same sections were again included in G.S. 1915 as §§ 9408 through 9411.

In 1921, the legislature, by Chapter 207, Laws of 1921, directed the Supreme Court to appoint a commission of three members to supervise the revision, compilation, and printing of the General Statutes of Kansas in one volume. This commission's product was the Revised Statutes of 1923. New chapters were added and other chapters were dropped or changed from the general compilation of the statutes. A new Chapter 26 was created on the subject of eminent domain for the purpose of covering all the provisions relating to the condemnation of private property for public use. R.S. 1923, 26-101 was the general condemnation law, stating that "[a]ny corporation, having the right of eminent domain, except railroad and interurban railway corporations, shall exercise such right" in accordance with the procedure prescribed in that section. In paragraph three of 26-101, provision was made for the payment of the appraised price into the office of the clerk of the district court and, upon so doing, the title to the property condemned should immediately vest in the petitioner. The statutes, which previously had been §§ 1 and 2 of Chapter 86 of Laws of 1909, were placed in R.S. 1923, 72-4701 and 72-4702. It is interesting to note that although these two sections conferred upon school district boards the right of eminent domain, there is no specific reference to the interest which could be acquired, whether fee simple or otherwise, and there is no language to the effect that the title condemned should be vested in the school district.

What had been Section 1 of Chapter 174 of the Laws of 1885 was placed by the commissioners at R.S. 1923, 72-503. That section provided that in case any school district cannot purchase a school site at a reasonable rate it may proceed "to condemn and acquire title to such real estate, as provided by law." The magic word "title" is still used, and it appears that no one at that time questioned the power of a school district board to condemn property for a school site and to acquire the fee interest.

Sections 72-503, 72-4701, and 72-4702 were included with the same section numbers in the General Statutes of Kansas of 1935 and again in the General Statutes of Kansas of 1949. It is of

interest to note that 72-503 had been modified by the 1943 legislature by authorizing a common-school district board to appropriate private property for a site or for any other school purpose and that the board may proceed to condemn and acquire title as provided in Article 1 of Chapter 26 of the General Statutes of 1935 and acts amendatory thereof and supplemental thereto. Thus the sections in Chapter 72 pertaining to the power of eminent domain in school boards, instead of setting out the procedure in that chapter, simply authorized the board to condemn by proceeding as provided in Article 1 of Chapter 26.

The statutory changes which brought about this lawsuit occurred in the legislative session of 1951. In that session, the legislature enacted Chapter 395, Laws of 1951. That chapter was a complete clarification and codification of the laws governing schools in this state. It covered such matters as the powers and duties of the county superintendent of schools, school meetings, the duties of common-school district officers, registration of teachers' certificates and school bonds. The statute had specific sections covering boards of education of common-school districts, community high schools, and rural high schools. As a part of this complete reorganization of the school laws of Kansas, additional provisions were also enacted in Chapters 396 through 428. These were special statutes covering such matters as common schools in Johnson County, payment of tuition of elementary pupils in certain cases, creation of building funds in certain districts, school employees' retirement systems, high school extension courses, and other matters affecting only certain specific school districts. There was no legislation which purported to have as its purpose the diminution of the power of eminent domain previously vested in school boards.

Section 74 of Chapter 395, Laws of 1951, repealed §§ 72-503, 72-4701, and 72-4702 of the General Statutes of 1949. Section 72 amended G.S. 1949, 72-7401, to provide as follows:

"Sec. 72-4701. *Right of eminent domain.* The right of eminent domain is hereby conferred upon common-school districts, rural high-school districts, community high-school districts and the boards of education of cities of the first and second class, to be exercised in the manner provided by article 1 of chapter 26 of the General Statutes of 1949 and acts amendatory thereof and supplemental thereto. Such right of eminent domain may be invoked for the purpose of appropriating private property for use for sites for school buildings, playgrounds, agricultural, vocational or athletic purposes, or any addition or extension to any school

building site or playground, or for any other school purpose for which property may be lawfully acquired." p. 629.

It is important to note that the magic word "title" has now been eliminated and is no longer contained in the new 72-4701. G.S. 1949, 72-503, which had previously authorized a school district board to "condemn and acquire title" to property by condemnation had now been eliminated. The gut issue present in this case is whether the elimination of the magic word "title" had the effect of taking away from all school district boards the power to acquire fee title to land condemned for school sites, which had been the law of Kansas since 1874.

It must be emphasized that G.S. 1949, 72-4701 (1955 Supp.) specifically refers to Article 1 of Chapter 26 of the General Statutes of 1949 and acts amendatory thereof. This is known in legislative parlance as "legislation by reference." It is a procedure which has been followed in Kansas for many years. Statutes which refer to other statutes and make them applicable to the subject of the new legislation are called "reference statutes." It is said that the purpose of such practice is to incorporate into the new act the provisions of other statutes by reference and adoption, and thereby to avoid encumbering the statute books by unnecessary repetition. 73 Am. Jur. 2d, Statutes § 28. The adoption of an earlier statute by reference makes it as much a part of the later act as though it had been incorporated at full length.

In *Griffin v. Gesner,* 78 Kan. 669, 670-71, 97 Pac. 794 (1908), the Supreme Court made the following comment on legislation by reference:

"Legislation by reference to other acts sometimes produces decidedly crude statutes and frequently occasions confusion and uncertainty in the law. Such legislation is prohibited by the constitutions of some of the states, but the method is not entirely condemned by the constitution of this state. (*Wichita v. Telephone Co.,* 70 Kan. 441, 447, 78 Pac. 886.) When the references are as blind as they are in the primary election law it becomes a very difficult and perplexing thing for the people, for public officials and for the courts to know what the statutory provisions are upon the subjects involved."

The procedure of legislation by reference is also recognized in *Board of County Comm'rs v. Robb,* 166 Kan. 122, 136, 199 P.2d 530 (1948); *State, ex rel., v. Davis, Governor,* 116 Kan. 663, 229 Pac. 757 (1924); *State v. Shawnee County,* 83 Kan. 199, 203, 110 Pac. 92 (1910).

The most recent case on the effect of the reference of one act to

another statute is *Johnson v. Killion,* 178 Kan. 154, 283 P.2d 433 (1955). Syllabus ¶ 2 of *Johnson* states that the adoption of an earlier statute by reference makes it as much a part of the later act as though it had been incorporated at full length. Applying the legal principle of *Johnson* to the new 72-4701 as amended in 1951, the eminent domain procedure section contained in Article 1 of Chapter 26 of G.S. 1949 is to be considered a part of 72-4701 as if it was set forth therein in full. G.S. 1949, 26-101, in the second paragraph, specifically provides:

"If the petitioner desires to acquire the land at the appraised price it shall within thirty days deposit with the clerk of the district court the total amount of such appraisement, shall pay the court's costs and the fees of the appraisers, to be fixed by the court or the judge thereof, *and the title to all such lots and parcels of ground thereupon shall immediately vest in the said petitioner,* and the said petitioner shall be entitled to the immediate possession thereof and all remedies provided by law for the security of such *title* and possession. If the petitioner shall not within thirty days comply with all of the terms of such condemnation or appeal therefrom, judgment for the costs of such proceeding, including appraisers' fees, shall be entered against the petitioner as in other cases." (Emphasis supplied.)

We, thus, again have the magic words, "the title shall vest," contained in 26-101 made by reference a part of 72-4701 which confers upon school district boards the power of eminent domain. This logically would seem to place us back in the same position we were in 1874 and in the same position were were in when *Buckwalter* (1902) and *Devena* (1960) were decided. At this point, since the phrase "title shall vest" is used by reference in 72-4701, it would appear that school district boards had the power to condemn land for a school site and to acquire fee title in condemnation proceedings.

Before leaving the statutory changes contained in Chapter 395 of the Laws of 1951, we should note certain other sections of that chapter. Section 17, covering the subject of joint school buildings, provides that "[l]egal title to the site or sites upon which such joint building or buildings are located may be taken in the name of either or both of such districts, . . ." Section 37 states, without equivocation, that the school board shall hold the title to, and have the care and keeping of all school buildings and other school properties belonging to the city-school district. That section further provides that school buildings and other school property not needed by the city-school district may be sold by the

board, at private or public sale upon the affirmative vote of two-thirds of the board members. Section 55, which has to do with the power and duties of a board of trustees of a community high-school district, declares that they shall have the power "[t]o sell at private or public sale, any school building, real or other property belonging to the high-school district when the same is no longer necessary for the use of the district." Section 71 authorizes the sale of school property of a disorganized school district by the county superintendent and for *a division of the proceeds* among the various school districts involved. We believe that all of these sections are extremely important and should be read together with Section 72, covering the subject of eminent domain. These sections clearly recognize the power of a school board to hold the legal title to school building sites and to sell such real estate when it is no longer needed by the school district.

As noted above, the property which is in dispute in this case was the subject matter of condemnation actions filed by the predecessor of the plaintiff in 1956 and 1959. At that time the statutes provided as follows:

G.S. 1949, 72-4701 (1955 Supp.).

"**Conferral of right; how exercised; purposes.** *The right of eminent domain is hereby conferred upon common-school districts,* rural high-school districts, community high-school districts and the boards of education of cities of the first and second class, *to be exercised in the manner provided by article 1 of chapter 26 of the General Statutes of 1949* and acts amendatory thereof and supplemental thereto. Such right of eminent domain may be invoked for the purpose of appropriating private property for use for sites for school buildings, playgrounds, agricultural, vocational or athletic purposes, or any addition or extension to any school building site or playground, or for any other school purpose for which property may be lawfully acquired." (Emphasis supplied.)

G.S. 1949, 26-101 provided for vesting of title as discussed above. Construing these statutes together along with the other sections of Chapter 395 of the Laws of 1951 and relying upon *Buckwalter* and *Devena,* we have concluded that the predecessor of the plaintiff school board in this case acquired fee title to the land condemned in the condemnation proceedings in 1956 and 1959. In our judgment, comparable statutory language is present which requires the same result as was reached in *Buckwalter* and *Devena.*

We have noted above the rules of statutory construction which the courts are required to apply in determining legislative intent.

We are especially impressed with the holding in *Coe v. Security National Ins. Co.,* 228 Kan. 624, that a statute should never be given construction that leads to uncertainty, injustice, or confusion, if possible to construe it otherwise. A construction of the statutes in this case to the effect that school districts, as a matter of law, have not had the power to acquire fee title in any condemnation action since 1951 would produce an extremely unjust result and could cause great financial hardship to many school districts owning school sites taken by condemnation and private citizens who have purchased abandoned school sites from school districts in the past. It was during the 1950's and 1960's that the schools of this state were inundated as a result of the baby boom which occurred immediately after World War II. This was also the period of widespread school unification when in the interest of more efficiency and better public education many school districts in the state were disorganized and consolidated with others.

It would be reasonable to say that several hundred pieces of private land were condemned for school building sites by school boards in Kansas from 1951 until the beginning of the 1980's. Thousands of dollars of public funds derived from the sale of school bonds were expended to construct public buildings and other improvements on condemned land. All of these actions were taken under statutory authority. It is difficult to believe that it was the intent of the legislature that these school districts were not authorized to receive the fee title to the lands condemned.

Furthermore, in these condemnation actions, both the school district condemning the land and the landowners assumed that the school district was taking a fee title. Under Kansas eminent domain procedure, where the entire tract of land was taken, the landowner was compensated by payment of the *full value of the land at the time of the taking.* If a part of a tract was taken for a school site, the landowner was paid the full value of the land taken and the severance damage to the remainder of the land not taken. The judges and the attorneys and the litigants assumed that the school district was taking the land in fee and was paying full value therefor. If the judgment of the Court of Appeals is to stand in this case, the result will be that the heirs and grantees of the original owners in the condemnation cases will get an unjust and substantial windfall. The effect would be that a landowner or his

grantee would be paid twice the fair value of his property. As noted above, this court has the duty to construe legislation in such a manner that the construction will not lead to uncertainty or injustice or confusion, if possible to construe it otherwise.

The present controversy on the nature of the title acquired by the school district in this case, apparently, stems from the decision of this court in *Sutton v. Frazier,* 183 Kan. 33, where the court held that an improvement district, although it sought to acquire fee title in a condemnation action, did not acquire title to the mineral estate in the land. The Court of Appeals also relied heavily on *Kansas Gas & Electric Co. v. Winn,* 227 Kan. 101, 605 P.2d 125 (1980), which involved the taking of land by an electric power company. It is important to note that neither *Sutton* nor *Winn* involved the taking of property for a school site by a school district. We, therefore, do not consider either *Sutton* or *Winn* controlling in the present case.

In finding an answer to the issue presented in this case, we have deemed it essential to consider the public policy of this state for the past one hundred years with respect to school lands and their importance in providing a sound financial basis for the public schools. We have considered the legislative history and the background of the various statutory changes which brought about this litigation. We cannot find anywhere even a suggestion that the legislature intended to change the well established principle of law that school districts which condemn land for a school building site acquire the fee title to the property so taken. We have considered the unjust result from a contrary construction of the statute, considering both the financial disruption which would inevitably result to some school districts and the injustice in paying public money to citizens whose predecessors in title were paid the full value of the property taken in the condemnation case.

For the reasons set forth above, we hold that the district court reached the correct result in this case and that its judgment should be affirmed. The judgment of the Court of Appeals reversing the district court is reversed.

FROMME, J., not participating.

SCHROEDER, C.J., dissenting: The law of Kansas as it relates to the power of eminent domain, which heretofore could only be

exercised by virtue of legislative enactment giving specific authorization, has now yielded to change in favor of *the public interest.*

The law of eminent domain as applied to the statutes material herein, and *as it has been construed for the past 30 years,* is correctly stated and applied to the facts in this school condemnation case in the opinion written by Mr. Justice Fromme, sitting on the Court of Appeals, in *Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc.,* 6 Kan. App. 2d 888, 636 P.2d 802 (1981). The Supreme Court granted a Petition for Review. As a preliminary to further discussion, I incorporate the Court of Appeals opinion herein and fully endorse it as a part of my dissenting opinion.

Normally, statutes granting the right of eminent domain should never be enlarged by implication. *Strain v. Cities Service Gas Co.,* 148 Kan. 393, 83 P.2d 124 (1938); *Sutton v. Frazier,* 183 Kan. 33, 40, 325 P.2d 338 (1958).

It must be noted the court is not concerned in this case with the special power conferred upon a public or quasi-public body to purchase, hold, sell and convey real estate and other property. Under such special power it may purchase the real property in fee simple by warranty deed, including all interests therein, and convey the same in like manner. That power authorizes acquisition of property without resort to condemnation where it is possible to agree with the owner upon the price. But such *special* power confers no privilege upon a public or quasi-public body to take the fee simple title, including all interests therein, *against the will of the owner by the exercise of its power of eminent domain. Sutton v. Frazier,* 183 Kan. at 41.

The court in its opinion recognizes the authority of *Sutton v. Frazier,* 183 Kan. 33, as standing for the proposition that eminent domain statutes will be construed to authorize *only the taking of an easement on or title to land sufficient for the public use intended, and that the taking of fee title is authorized only where the empowering statute clearly so provides, either expressly or by necessary implication.*

Here the court was required to find a legislative intent to authorize the taking of fee simple title for *school use* by "necessary implication," that is, by reading empowering provisions into the enabling legislation (G.S. 1949, 72-4701 [1955 Supp.]). In

doing so the Kansas rule authorizing the "necessary implication" of legislative intent has been expanded by resort to foreign law and far beyond any prior Kansas decisions.

The cases establishing the rule that the condemner is authorized to take the fee simple title to land in a condemnation proceeding by "necessary implication" are *State, ex rel., v. State Highway Comm.,* 163 Kan. 187, 197, 182 P.2d 127 (1947), and *Devena v. Common School District,* 186 Kan. 166, 348 P.2d 827 (1960). *Devena* cited and adhered to *Sutton v. Frazier,* 183 Kan. 33, as the law in the construction of statutes authorizing condemnation, and *Sutton* cited with approval *State, ex rel., v. State Highway Comm.,* 163 Kan. 187, which construed the condemnation statute to authorize the taking of fee simple title by necessary implication of legislative intent in the statute, but overruled the case in part on other grounds. *Devena* cited *Buckwalter v. School District,* 65 Kan. 603, 70 Pac. 605 (1902), for the proposition that the same school condemnation statute was before the court in *Buckwalter* and was there construed. It is important to note these cases were founded on statutory enactments which authorized the condemnation of land for school purposes and which were construed to authorize school districts to take fee simple title to land condemned for school purposes. The statutes were amended in 1951.

A careful reading of the statutes construed, where the taking of the fee simple title in a condemnation proceeding was authorized by necessary implication, leads to the inescapable conclusion they are clearly not applicable as authority for the construction of G.S. 1949, 72-4701 (1955 Supp.) here under consideration.

To accept the appellee's argument, as the court has done, that the enabling statute (G.S. 1949, 72-4701 [1955 Supp.]) must be construed in conjunction with the procedural statute (G.S. 1949, 26-101), to which reference is made in the enabling statute, would render meaningless any reference to specific grants of power. Application of the general procedural statute would result in transfer of fee simple title *in all eminent domain proceedings.* Such a result obviously was not intended by the legislature. The procedural provision for the condemnation of land *contains no grant of power* and cannot expand the specific substantive provision. Nor can language incorporated in the papers of the eminent domain proceeding expand power granted in the enabling statute.

*Kansas Gas & Electric Co. v. Winn,* 227 Kan. 101, 104, 605 P.2d 125 (1980); *Sutton v. Frazier,* 183 Kan. at 39.

The appellee presents an extensive review of the statutory history of the exercise of eminent domain by common school districts. Reference has been made to *Devena v. Common School District,* 186 Kan. 166, and *Buckwalter v. School District,* 65 Kan. 603, construing G.S. 1889, section 5591. While acknowledging the word "title" appears in the prior statutory provision as a distinguishing feature, the appellee argues the word "title" was omitted from the provision under consideration during codification of school law with no legislative intent to alter materially the nature of the estate taken on condemnation. The appellee requests the court to consider rights historically granted to school districts in interpreting the right under consideration in the instant case. I do not perceive it to be the function of our court to encompass preservation of rights previously enjoyed by school districts when the general rules of law and *the specific statute* under consideration unmistakably point in another direction.

In determining the legislative intent for the purpose of statutory construction, the historical background and changes made in a statute are to be considered by the court, and any *changes and additions made in existing legislation raise a presumption that a change in meaning and effect was intended. State ex rel. Stephan v. U.S.D. No. 428,* 231 Kan. 579, 647 P.2d 329 (1982), and authorities cited therein.

The 1951 change (L. 1951, ch. 395) by the legislature in the school condemnation statute must be construed as an intended change in the enabling statute from authorization to take fee simple title, prior to that time, to an authorization "for the purpose of appropriating private property for *use* for sites for school buildings" (emphasis added) which is less than fee simple title. G.S. 1949, 72-4701 (1955 Supp.).

Similarly, the 1982 session of the legislature enacted Senate Bill No. 729 which became law. (L. 1982, ch. 301.) It provides in part:

"New Section 1. (a) *A unified school district may acquire by condemnation, for school purposes, any interest in real property, including fee simple title.* If, within 10 years after entry of final judgment under K.S.A. 26-511, the school district fails to construct substantial buildings or improvements that are used for school purposes on any real property acquired under this subsection, the school district shall notify the original owners or their heirs or assigns that they have an option to

purchase the property from the school district for an amount equal to the compensation awarded for the property under the eminent domain procedures act. Such option shall expire if not exercised within a period of six months after the date of the expiration of the ten-year period.

"(b) *A unified school district may acquire by condemnation, for any purpose whatsoever, any reversionary interest held by others in real property which the school district has previously acquired by condemnation, deed or contract if:*

"(1) *The district, or its predecessor districts, has constructed substantial improvements on the property; and*

"(2) *the school district, or its predecessor districts, has held an interest in the property for at least 20 years."*

Clearly, the legislature intended to change the school condemnation law, as it existed prior to the 1982 enactment, and authorize the taking for school purposes of fee simple title by a unified school district in condemnation proceedings *after* its enactment into law. To emphasize the intended change, in section (b) above *the legislature recognized the reversionary interest outstanding* in real property *"previously acquired by condemnation"* and authorized the school district to condemn the reversionary interest held by others in real property where the school district had an interest in the real property for at least 20 years and upon which improvements had been constructed.

On the record here presented the Board of Education of U.S.D. 512 has not abandoned use of the school property but is seeking merely to quiet title. Under the 1982 enactment it is now authorized to condemn the reversionary interest outstanding.

Many school closings are now contemplated by reason of decreasing student attendance at various attendance facilities in school districts in Kansas. The highly inflated value of urban real estate used for school sites, where abandonment of the school facilities is contemplated, and the need for additional school funds have led the court after 30 years of established law to reconsider legislative intent. Here legislative intent is utilized as a fiction to do "equity" in favor of public monetary considerations in complete disregard of prior condemnation law.

In its opinion the court says:

"It would be reasonable to say that several hundred pieces of private land were condemned for school building sites by school boards in Kansas from 1951 until the beginning of the 1980's. Thousands of dollars of public funds derived from the sale of school bonds were expended to construct public buildings and other improvements on condemned land. All of these actions were taken under statutory authority. It is difficult to believe that it was the intent of the legislature that these

school districts were not authorized to receive the fee title to the lands condemned." (p. 744.)

The legislature is capable of speaking with clarity when it intends that the condemning authority shall acquire the fee simple title to real property taken under the power of eminent domain. *Sutton v. Frazier,* 183 Kan. at 43, citing L. 1864, ch. 124, sec. 4 (since repealed); G.S. 1949, 13-1388 (1957 Supp.); G.S. 1949, 17-4749 (1957 Supp.); G.S. 1949, 68-413, -413a (1957 Supp.). As a further example of legislative capability, witness the clarity in Senate Bill No. 729 enacted by the 1982 session of the legislature.

It is respectfully submitted the decision of the Court of Appeals should be affirmed and the decision of the district court reversed.

HOLMES, J., joins the foregoing dissenting opinion.